# Parker v. Olliver.

## Bill in Equity to Foreclose Mortgage.

1. *Mortgage; stipulation for early maturity of debt upon certain contingencies not a penalty and not invalid.*—A stipulation in a mortgage that upon the occurrence of certain contingencies the mortgage debt shall mature and become payable, the only effect of which stipulation is the acceleration of the payment of an existing debt, neither imposes a penalty on the mortgagor for the happening of the contingency, nor works a forfeiture of any of his rights if it does happen; and a stipulation in a mortgage that the mortgage debt will mature in the event the mortgagor should allow the taxes on the property conveyed to become delinquent, is not the provision for a penalty or forfeiture against which a court of equity will, either directly or indirectly, grant relief; and to a bill filed on the happening of such contingency to foreclose the mortgage a plea which avers the subsequent payment of the delinquent taxes presents no defense and is wholly bad.

2. *Same; same; custom and usage no defense.*—Where, in a bill to foreclose a mortgage which contains a stipulation that the mortgage debt shall become due in the event the mortgagor allows the taxes on the property conveyed therein to become delinquent, it is averred that the mortgagor had allowed the taxes to become delinquent, and they were at the time of filing the bill still unpaid, a plea, which admits that under the statute the taxes were delinquent, but averred the existence of a custom allowing taxes to be payed any time after statutory delinquency up to a certain time of the succeeding year, which custom was known to the mortgagee when the mortgage was

[Parker v. Olliver.]

executed, and that in the exercise of the privilege of such custom the mortgagor had payed the taxes before the expiration of such time after delinquency, but after the bill was filed, presents no defense to the bill and is bad; the contingency upon the happening of which the debt was to become earlier matured being delinquency within the meaning of the statute, the effect of the happening of this contingency can not be changed by any such custom.

3. *Same; same; failure to declare debt due on first happening of contingency does not preclude the right to so declare on second*—The stipulation in a mortgage that in the event the mortgagor allows the taxes on the mortgaged property to become delinquent, the mortgage debt shall become due, with the right of foreclosure, gives a continuing right, to be taken advantage of by the mortgagee or not, as he may elect, at any time the contingency provided for should happen or recur; and the fact that he did not elect to declare the debt due and to foreclose the mortgage the first time the mortgagor allowed the taxes to become delinquent, does not impair the right of the mortgagee to declare the debt due upon the recurrence of subsequent delinquency, nor preclude him from exercising thereupon the right of foreclosure.

4. *Same; same; notice of interest becoming due no waiver to foreclose for delinquency in payment of taxes.*—Where in such case, after the mortgagor has allowed the taxes to become delinquent, the mortgagee notifies the mortgagor that one of his notes for interest on the mortgage debt would soon fall due and should be paid, such notice is not a waiver of the right to declare the debt matured and to have the mortgage foreclosed for the delinquency which was then existing; and after the exercise of the right by filing a bill to foreclose the mortgage, a demand for the instalment of interest can have no effect upon his right to maintain the suit.

APPEAL from the Chancery Court of Montgomery. Heard before the Hon. JERE N. WILLIAMS.

The material facts of this case are sufficiently stated in the opinion. The defendant filed five pleas, in which he set up facts which he alleged were sufficient to bar the right of complainant to relief. By the 5th plea the defendant set up the fact that if there had been a breach in any of the covenants set forth in the bill of complaint, authorizing a foreclosure of the mortgage therein described, said breach had been waived by the complainant writing two letters to the defendant asking for the payment of interest on the mortgage debt after the occurrence of the delinquency in the payment of the taxes. In the first of these letters, marked exhibit A to the 5th plea, and which was written March 19th, 1894, the Receivers of the Lombard Investment Company notified the

defendant of the falling due of his interest note on May 1st, and asked him to remit the amount due at once. In the other letter, marked exhibit B, which was dated May 24th (after the bill was filed), the complainant called the defendant's attention to the fact that his interest note was past due, and asked that he give. the matter immediate attention and remit the amount thereof at once.

On the submission of the cause on the pleas, the chancellor decreed that the pleas were insufficient and overruled them. From this decree the defendant prosecutes the present appeal, and assigns the same as error.

JOHN G. WINTER, for appellant.—1. · The power reserved to foreclose a mortgage for a breach of the covenant to pay taxes, is in the nature of a forfeiture, and a court of equity will ordinarily grant relief against such power, or refuse to allow it to be enforced, where the taxes are afterwards payed. And "it is well settled, that where the agreement secured, is simply one for the payment of money, a forfeiture * * * * incurred in its non-performance, will be set aside on behalf of a defaulting party, or relieved against in any other manner made necessary by the circumstances of the case, on payment of the debt, interest and costs, if any have accrued, unless by his inequitable conduct he has debarred himself from the remedial rights; or, unless the remedy is prohibited under the special circumstances of the case, or by some other controlling doctrine of equity."—*Tibbits v. Cate*, 22 Atlantic Rep. 559; Taylor's Landlord and Tenant, (7th ed.), §§ 495-6; *Giles v. Austin*, 62 N. Y. 486; 1st Pomeroy Eq. Jur., §§ 450, et seq.

2. Such a condition may be waived by the conduct of the party seeking to enforce it ; and even, if the condition is broken by accident, mistake, misunderstanding or ignorance, equity will refuse to enforce it.—*Hukill v. Myers*, 15 S. E. Rep. 151 ; *MacTier v. Osborn*, 15 N. E. Rep. 641; *Tibbits v. Cate*, 22 Atlantic Rep. 559. And if by the conduct of the party, seeking to enforce the condition, he lulls his opponent into a feeling of security, and throws him off his guard, he can not suddenly and without demand or notice, declare a forfeiture.—*Hukill v. Myers*, 15 S. E. Rep. 151.

3. The term "delinquent" used in the mortgage and note in reference to taxes, may be explained so as to show the sense in which it was used. Such evidence is

[Parker v. Olliver.]

received not for the purpose of importing into the writing an intention not expressed therein, but simply with the view of elucidating the meaning of the words employed. *Guilmartin v. Wood*, 76 Ala. 209; *Chambers v. Ringstaff*, 69 Ala. 140 ; *Capital City Ins. Co. v. Caldwell*, 95 Ala. 77.

HORACE STRINGFELLOW, *contra.*—1. A condition in a mortgage that in case the taxes assessed upon the premises shall remain unpaid after a certain date in any year the whole debt shall become due, is equally binding and operative as a like condition in respect to the payment of any instalment of interest, and the court has no power to relieve the person in default from the consequences of it.—2 Jones on Mortgages, § 1175 ; *Chambers v. Marks*, 93 Ala. 412; *Phillips v. Taylor*, 96 Ala. 426.

2. Nor is such a stipulation regarded in the nature of a penalty or forfeiture in disfavor with the courts, but as an agreement for bringing the notes, in a certain event, to an earlier maturity than expressed on their face, which must be construed and the intention of the parties ascertained by the same rules as other contracts. *Chambers v. Marks*, 93 Ala. 512 ; 8 Amer. & Eng. Encyc. of Law, 192, note 1.

3. It is well settled that "evidence of usage or custom will not be admitted when it contravenes or displaces any of the general principles of the statutory or common law."—*E. T. V. & G. R. R. Co. v. Johnston*, 75 Ala. 604 ; *Lehman, Durr & Co. v. Marshal*, 47 Ala. 362. The alleged custom is not only contrary to the express provisions of the statute but is greatly detrimental to the proper administration of the government, which depends upon the prompt payment of the taxes from which its revenue is derived. It is also in conflict with the duty imposed by the statute upon the tax collector and upon the tax payer.—Code, §§ 535, 536. The alleged custom, therefore, cannot be considered to show that the taxes upon the mortgaged property were not due and delinquent.

4. It is averred in the pleas that the appellant relied upon the alleged illegal custom, and had never "paid said taxes until after the 1st of January of the succeeding year, and that complainant, having full knowledge thereof, had never made any objection," &c. The only fact averred, therefore, upon which an estoppel is en-

[Parker v. Olliver.]

deavored to be raised, is the omission of complainant to object to appellant's failure to pay the said taxes until after the 1st day of January of the succeeding year. It is well settled that there can be no estoppel "from silence when there is no duty to speak," for "if there is no violation of duty the reason of the rule ceases, and the rule itself does not apply."—*Steele v. Adams*, 21 Ala. 540; 7 Amer. & Eng. Encyc. of Law, p. 13, and note 6. It is not shown, therefore, that appellee "Ever did or said anything or omitted to do or say anything that he ought to have said or done, by way of inducing said default.—*Friedman v. Loveman*, 97 Ala. 436.

5. The mere indulgence of appellee in not objecting to the omission to pay taxes before January 1st, could not justly be construed as a permanent waiver of the right to foreclose in case of failure to pay when the delinquency diminished or endangered the security for his debt. Appellants had no right, without some agreement to that effect, to rest on such voluntary indulgence shown on one occasion as a ground for claiming it on all occasions.—*Thompson v. Insurance Co.*, 104 U. S. 259; *Driggers v. Cassady*, 71 Ala. 529; *Ware v. Coles*, 24 Ala. 449; *Miller v. Hampton*, 37 Ala. 342.

McCLELLAN, J.—This bill is filed by Olliver against Parker *et al.* to foreclose a mortgage executed by the latter to the Lombard Investment Company, and covering certain lands situated in the county of Montgomery, to secure a loan of money evidenced by a promisory note, and which mortgage and note were assigned to and are now the property of the complainant. The main question in the case as now presented is whether the bill was prematurely filed; and that question rises upon the following facts stated in the bill and in certain pleas filed by the respondents: Said note and mortgage were executed October 25, 1890, and the note was due and payable on, and the law day of the mortgage fell upon, November 1, 1895; but the note contains this stipulation: "If the maker of this note and interest notes attached hereto shall allow the taxes or any other public rates or assessments on the property or any part thereof given as security for the aforesaid notes to become delinquent, * * * * then upon the happening of any of said contingencies the whole amount herein secured shall at

[Parker v. Olliver.]

once become due and payable, and the mortgagee, its legal representatives or assigns, may proceed at once to collect this note and foreclose the mortgage given to secure said note, and sell the mortgage property to satisfy said debt, interest and costs,'' &c. And said mortgage contains this provision : ''The first party [the mortgagor] agrees to pay all the taxes or assessments, general or special, levied upon said real estate or upon this mortgage, before the same becomes delinquent, * * * * and if not paid, the holder of this mortgage may, without notice, declare the whole sum of money herein secured due and collectible at once.'' Having relation to these stipulations in the note and mortgage, the bill, which was filed May 4, 1894, avers: ''that the said makers of said notes have allowed the State and county taxes for the year 1893 to become delinquent and that the same are now delinquent, and that said property is in danger of being sold to satisfy the same, and orator avers that by reason of said delinquency said note has become due and payable, and he has so elected, and is entitled thereby to the foreclosure of said mortgage for the payment of said note, the interest and damages thereon and attorney's fee for the collection of said note and the foreclosure of said mortgage as in said note and mortgage provided.'' The pleas interposed by the respondents set up in substance : *First.* That since the filing of the bill the taxes for the year 1893 have been paid by them, that a failure to sooner pay the same was with no intention of subjecting the property to a decree of sale for the payment of said taxes or to violate the stipulation of the note and mortgage in that regard, but that they acted in respect of said delay ''only in accordance with a long established custom, existing in this county, to pay taxes for the preceding year [any time] before the 1st day of June of the succeeding year; and that said custom was well known to said mortgagee when said mortgage was made and to complainant when he became the assignee thereof ;'' and, further, that this property was not decreed to be sold for the taxes of 1893, and when the same were paid by the respondents they offered to pay the complainant all costs of the suit then accrued, and this offer is renewed in the plea. *Second.* That because of the existence and knowledge of all parties to the contract of the custom stated above of paying taxes at any

[Parker v. Olliver.]

time before the 1st of June of the year succeeding that
of the levy, the taxes of 1893 were not *delinquent* within
the meaning of the note and mortgage when this bill was
filed May 4, 1894, and would not have been so prior to
the 1st day of the ensuing month, before which time
they were paid. And *third*, that if there was a breach
of said stipulation accelerating the maturity of said note,
&c., the same has been waived by complainant, for that
thereafter, on March 19, 1894, and again on May 24,
1894, the receiver of the Lombard Investment Company,
complainant's assignor, wrote letters to the maker of the
note and mortgage demanding payment of a coupon in-
terest note due May 1, 1894, and that said letters were
written by the receiver as the agent of the complainant
and by his direction.

1. It is entirely competent for debtor and creditor to
agree upon a date or a contingency upon the occurrence
of which the debt matures and becomes payable, or al-
ternatively upon a date and a contingency, the date to
toll maturity unless the contingency happens before it
transpires, and the contingency to mark the time of
maturity if it happens before the alternate day fixed in
the contract. There is nothing in such stipulations in
the nature of a forfeiture or a penalty. When the con-
tingency occurs, it is as if the parties, without reference
to any contingency, had agreed upon that day as the
time of maturity and payment, and not in any sense up-
on the idea that the bringing of the debt to maturity at
that time is a penalty on the debtor for the happening
of the contingency or a forfeiture of any right of his be-
cause it did happen. The debt matures upon that event
because he has agreed that it should; and as he pays
not one cent more than the debt with accrued interest,
which the creditor would be entitled to however long
maturity might have been postponed, it is not conceiva-
ble that in paying back the money borrowed with inter-
est for the use of it while he has actually had such use,
any penalty or forfeiture can possibly be involved. The
character of the contingency cannot be of consequence,
any more than it can be important what year or month
or day the parties fix upon for payment where maturity
is thus tolled : the happening of the contingency but de-
termines the year and month and day of maturity and
puts it into the contract as if it had been originally

stated therein. The event may bear a relation to the contract or it may not. It may consist of the doing or omission of something forbidden or required by the undertaking of the parties, or it may be entirely collateral thereto and independent thereof. A note by A. to B. may be payable on a day certain, or upon the death meantime of C., or upon the failure meantime to pay any monthly instalment of interest, or upon A's failure to meet meantime some other wholly independent obligation of his, or upon his contracting another liability, or allowing his property to become subjected to a lien or charge, &c. &c. So long as the effect of the stipulation is only the acceleration of the payment of an existing debt, it involves nothing in common with a penalty or forfeiture and will not be relieved against directly or indirectly in a court of equity. The stipulation here that this debt should mature in the event the debtor should allow taxes on the property conveyed to the creditor to secure its payment to become delinquent is clearly within this principle; and the plea which averred subsequent payment of delinquent taxes, and upon this fact invoked the equitable doctrine of relief against penalties and forfeitures, was wholly bad.—1 Pom. Eq. Jur., § 439; *Chambers v. Marks*, 93 Ala. 412; *Standift v. Morton*, 11 Kan. 48.

2. The stipulation in this note and mortgage is, as we have seen, that they shall become due &c. upon the event of the maker thereof allowing the taxes ''to become delinquent.'' The bill, speaking as of the date of its filing, May 4, 1894, avers that the makers of said note had allowed the taxes upon said property for the year 1893 to become delinquent, and that the same were then delinquent. We find no plea in this record taking issue upon this averment. By force of the statute the taxes for the year 1893 became delinquent on December 31, 1893. The plea intended to be addressed to this point admits that the taxes in question were not paid till May 14, 1894. It further avers that there was a custom by which taxes for 1893 *were payable* at any time before June 1, 1894. These taxes were in fact *payable* from and after October 1, 1893, and at all times· subsequent to that date whether before or after June 1, 1894 until they were paid; but the fact that they were payable after December 31, 1893, and customarily could be

paid up to and even after June 1st, following, no more tends to show that they were not delinquent on and after the last day of the year of the levy than the fact that they were payable during the months of October, November and December of that year. In other words, the contingency of the stipulation was delinquency; the bill avers that delinquency; and the plea neither denies that averment nor states facts inconsistent with it. Whatever custom may have existed as to the time of paying taxes, and however well it may have been known to the parties, they yet had a right to stipulate for maturity of the note and mortgage at the time taxes should become delinquent. This they did. The bill avers the happening of the contingency. The plea does not contradict it. The plea was bad.

3. The stipulation in question was a continuing one to be taken advantage of by the mortgagee or not as he might elect at any time when the contingency should happen or recur. His right of election upon a delinquency with reference to the taxes of 1893 was not impaired by the facts that there was a like delinquency in respect of the taxes of 1892, and that he did not then elect to treat the debt as being brought to maturity thereby. Having the absolute right to declare the note due upon any such delinquency, his failure to exercise it in one instance did not preclude its exercise in a subsequent instance. The first delinquency past without such election, the right was as fully secured to him by the terms of the contract as to a succeeding delinquency as it had been with reference to the first. And the fact that he had elected not to declare the debt due upon the first delinquency gave no assurance whatever that a subsequent right of election would be exercised in the same way. And it cannot be said that his election at one time not to declare the maturity of the debt induced the respondents to again allow the taxes to become delinquent, when they knew then as well as in respect of the first delinquency, that notwithstanding his pretermission at that time he had the unqualified right to make the contrary election. If they acted upon a different assumption, it was gratuitous, mere speculation upon which of two courses equally open to him he would adopt; and this action could in no sense be said to have been induced by him.

4.   On the averments of the 5th plea the letters, exhibits A and B thereto, it may be conceded, are to be taken as having been written by the then holder of the note and mortgage.   The first of these, that of March 19, 1894, was sent before bill filed, and was intended merely to call the mortgagor's attention to the falling due of an interest note on May 1st following.   The note was not paid, and three days after its maturity this bill was filed.   The fact of the non-payment of this instalment of interest may well have induced the mortgagee to exercise his right to declare the maturity of the whole debt with accrued interest because of the mortgagor's delinquency in respect of the taxes ; and while the notice with reference to the interest due on May 1st may have indicated a purpose on the part of the mortgagee not to bring the whole debt to maturity under circumstances existing on March 19th, when the notice was given, it cannot be said to have afforded any such assurance with reference to the different state of things which existed on and after default in the payment of that instalment.   The right to declare the note and mortgage presently due and payable existed at every moment of time after December 31, 1893.   That it was not exercised at an earlier date was no waiver of the right to exercise it on May 4th, 1894.   That the mortgagee had no purpose prior to that time to exercise it, or even had indicated to the mortgagor at any particular date during the period that it was not then and under then existing circumstances his purpose to exercise it, could not be said to be a waiver of the right for all time or under all circumstances.   He may well have been content to take the risks incident to a charge on his security for delinquent taxes so long as interest on the loan was promptly paid, and yet wholly unwilling to carry the loan under the conditions existing when the bill was filed ; both the taxes and the interest being unpaid and delinquent. Our conclusion is that the letter of March 19 was not a waiver of the right in question ; and, the right having been exercised on May 4th, the letter of May 14th could have no bearing on the question.

Affirmed.