184 So.2d 357

**Howard L. DIVETO et al.**

**v.**

**MID–STATE HOMES, INC., et al.**

6 Div. 143.

Supreme Court of Alabama.

March 17, 1966.

Curtis, Maddox & MacLaurin, Jasper, for appellants.

R. A. Norred, Birmingham, for appellees.

## PER CURIAM.

Complainants (appellants) filed their bill of complaint in the circuit court of Walker County, in equity, to enjoin the foreclosure of a mortgage on some real property in Walker County. The trial court, on final submission, after hearing the evidence ore tenus, dissolved a temporary injunction restraining the foreclosure, dismissed the bill, and taxed complainants and sureties on the injunction bond with all costs, for the collection of which execution was ordered to issue. On petition of complainants, the temporary injunction was reinstated pending appeal.

It appears from the evidence that complainants contracted with Jim Walter Corporation to erect or build a dwelling house for them on some real property they owned in Walker County. The contract price therefor was $3,180.00, without interest until after maturity, payable in sixty monthly installments of $53.00 each, the first installment to become due and payable on November 15, 1958, and on the 15th of each succeeding month until the whole of such indebtedness was paid. Commercial Credit Co. v. Tarwater, 215 Ala. 123, 110 So. 39(5), 48 A.L.R. 1437. The promissory note evidencing the debt, as aforesaid, and the mortgage securing the same were each dated September 23, 1958.

The note contains the following provision:

"* * * In the event of default in payment of this note and if the same is placed in the hands of an attorney for collection, I, we, or either of us, agree to

pay all costs of such collection; including a reasonable attorneys' fee."

The note was signed by complainants.

The mortgage also contains the following provision:

"That the Mortgagee shall, upon the happening of any default hereunder, resort to litigation for the recovery of the sums hereby secured, or employ an attorney to collect said sums or to foreclose this mortgage under the power of sale herein or by bill in equity, the Mortgagor will pay all reasonable costs, expenses, and attorney's fees thus incurred; and said costs, expenses, and attorney's fees, and any other sum or sums due the Mortgagee by virtue of any of the special liens herein declared, may be included in any judgment or decree rendered in connection with said litigation."

It also has an acceleration clause upon default in payment of any installment.

The mortgage also directs application of the proceeds of sale derived after foreclosure: first, to the payment of costs of sale, including a reasonable attorney's fee; second, to payment of the amount of said principal indebtedness; third, the balance, if any, to be paid to the mortgagor.

Nowhere does the mortgage or note condition the payment of an attorney's fee on foreclosure of the mortgage, as appellants contend, but on the other hand, an attorney's fee attaches in the event of default in the payment of the "note and in the event the same is placed in the hands of an attorney for collection," or, as in the mortgage, upon the employment of an attorney after default to collect the same.

The mortgage and note were assigned and transferred by mortgagee, Jim Walter Corporation, to Mid-State Homes, Inc., and by it later reassigned to Jim Walter Corporation.

Appellants became delinquent in their payments, and in response to a telephone call, received a telegram, dated March 4, 1959, from Mid-State Homes, Inc., as follows:

"Net to pay off account $2527.75 must be in office by March 12, 1959."

Tender of this amount was not made until sometime after March 12, 1959, and not before the note and mortgage was turned over to Mid-State's attorney for collection.

Appellees adduced evidence from Mr. O. C. King, vice-president and collection manager of Mid-State, a subsidiary of Jim Walter Corporation, and that the Jim Walter Corporation assigned subject mortgage and note to Mid-State on January 10, 1959. The assignment was introduced in evidence.

Witness King admitted that he sent the telegram to Mrs. Diveto granting a prepayment discount of the mortgage debt if paid by March 12, 1959. He further testified that when Mrs. Diveto made telephonic inquiry as to the prepayment discount, only one installment payment had been made on the debt and that the remaining installments were delinquent. And that mortgagors did not remit any money, except the one installment, on or before March 12, 1959.

Mr. King testified that after the date of March 12, 1959 had expired, his company, on March 23, 1959, forwarded the account to their attorney, Mr. Norred, an Anniston attorney, for foreclosure. He further testified in response to Mr. Norred's questions, as follows:

"Q. On this occasion was I at the time the file was sent to me given authority to proceed with foreclosure?

"A. Yes, sir.

"Q. Were there any restrictions or request as to how I should limit that, whether to go ahead with foreclosure and insist on the full indebtedness due immediately or was I given any instructions from you to accept any less amount?

"A. Yes, we always advised you, and in this case, to foreclose, but to accelerate

the balance, but if the account wanted to pay current at the time plus your fee and costs you should accept it.

"Q. At the time you sent that file to me did you give me any specific instructions about a pay off figure that had been quoted to Mr. and Mrs. Diveto?

"A. No, sir.

"Q. Did you after that file was sent to me on March 23 receive any call or have any conversation or correspondence with either Mr. or Mrs. Diveto about the mortgage debt?

"A. Yes, sir.

"Q. Tell us what that was if you would.

"A. On May 21, 1959 Mrs. Diveto called me at my office and advised me at the time her house was going to be foreclosed and she told me that she only had two thousand five hundred twenty seven dollars and seventy-five cents; that I believe she said they had gotten a loan and this was all the money they had at the time. Mrs. Diveto was crying at the time when she was talking with me on the phone. She said she wanted to save her house and I told her two thousand five hundred twenty seven dollars and seventy-five cents was not enough money. So, while she held the phone I figured a new pay off for her. I estimated your fees at a hundred dollars and I agreed with her I would stop foreclosure if she would pay you by June 1, 1959, send this money she had on to you and pay me a hundred twenty four dollars and twenty-five cents in thirty days. I phoned you the same date and told you to accept this two thousand five hundred twenty seven dollars and seventy-five cents when it came into you and I told you to deduct your expenses and that I had estimated your fee at a hundred dollars and you told me it would be possibly less. And I told you to take out whatever they were and send us the difference; that we had an agreement

she would pay the other money in thirty days.

"Q. I believe you testified this conversation with Mrs. Diveto took place on May 21, 1959?

"A. Yes, sir, my file indicates that the phone call was 5–21– of '59."

It appears from the evidence that the Divetos mailed a check for $2,527.75 to Mr. Norred on June 4, 1959. Mr. Norred remitted to his client after deducting an attorney's fee and publication costs. The remainder of the debt was not paid; hence, additional foreclosure proceedings were instituted, and this suit to enjoin was filed.

The evidence fails to disclose any dispute between the Divetos and the mortgagee as to the amount of the debt. There was no independent valuable consideration moving to payee for acceptance of an amount less than the debt. There was no receipt, release or discharge, in writing, as provided by § 381, Tit. 7, Code of 1940, to discharge, except the telegram that conditioned payment by March 12, 1959, which which was not done. There was no surrender to the debtor of the written evidence of debt. We said in McCoy v. Wynn, 215 Ala. 172, 110 So. 129(2), as follows:

"Such a payment, in order to operate as a satisfaction of the entire indebtedness, must have been predicated upon a bona fide dispute as to the amount justly due or upon an independent valuable consideration moving to the payee, or upon a written agreement of discharge, as provided by statute * * * or upon a surrender to the debtor of the written evidence of the debt. * * * Otherwise the agreement to release the unpaid portion of the debt is but a nudum pactum without any legal effect."

See: Title 9, § 4, Code 1940.

It plainly appears from the evidence that the prepayment sum was not remitted within the time indicated in the telegram and until after Mid-State had delivered the

note and mortgage to its attorney for collection. The evidence clearly indicates that the $2,527.75 paid thereafter was a prepayment sum only on condition that the attorney's fee and other collection costs were paid. Mortgagors made no further payments in accordance with the last prepayment agreement. The trial court made no finding of fact, but we think its decree is fairly supported by credible evidence and should be affirmed. Tyra v. Burns, ante p. 84, 181 So.2d 899. The decree is affirmed.

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit Judge, and was adopted by the court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, GOODWYN and COLEMAN, JJ., concur.