Plaintiffs, the Moseleys, sought to set aside a foreclosure sale. The circuit court, following a hearing, denied the relief sought. Plaintiffs appealed. We affirm.
On or about November 1, 1976, the plaintiffs and defendants entered into an agreement whereby plaintiffs were to purchase from the defendants .69 acres of land and the improvements thereon. The agreement was evidenced by plaintiffs' promissory note made payable to defendants and secured by a mortgage of the same date. The purchase price of $64,200.00 was to be payable over 16 years at 6% per annum by monthly installments of $520.94, each installment being due on the first day of the month. The promissory note contained terms which placed the makers in default for failure to pay a monthly installment by the first day of the month; however, it also specified that such a default could be cured by payment prior to the due date of the next installment. The note further provided that if the default was not cured the entire principal sum and accrued interest "shall at once become due and payable without notice at the option of the holder of this note."
Having encountered problems with late payments, the parties reached an agreement pertaining to the method by which payments would be made in timely fashion. The purchasers began making payments to the sellers through their respective banks in the following manner. The purchasers' bank, the Washington County State Bank in McIntosh, upon notification of a deposit, would issue its own cashier's check made payable to the sellers and would send this check to the sellers' bank, the Jackson *Page 343 
Bank and Trust Company in Jackson. The latter bank then would deposit the check into the sellers' account.
On February 23, 1982, plaintiffs deposited the amount of the February installment (which was due February 1, 1982), with their bank. On or about February 26, 1982, a cashier's check was prepared by plaintiffs' bank but was not sent by it to the defendants' bank until March 1, 1982. This check was received by defendants' bank on March 2, 1982, and deposited into defendants' account on that same day.
On or about March 24, 1982, the sellers' bank received the purchasers' March payment (due March 1), and it was deposited directly into the sellers' account.
There is some dispute as to the time when the defendants first learned that the February payment exceeded the grace period provided in the note. In its final order, the trial court noted that the plaintiffs failed to prove what date the defendants acquired knowledge of the late February payment. The defendants rejected the payment and returned the February and March payments to the plaintiffs by a letter dated April 9, 1982.
On June 7, 1982, the property was sold at a foreclosure sale. On July 1, 1982, the plaintiffs filed suit in the Circuit Court of Clarke County to set the foreclosure sale aside.
Following a hearing, the trial court entered an order denying the relief sought by the plaintiffs. This appeal ensued.
The first question presented is whether or not the acceptance of the February and March payments by the sellers' bank
constitutes an acceptance by the sellers themselves so as to waive the sellers' right to accelerate the payments under the note?
There is no dispute that the February installment, due on February 1, was in default. Although plaintiffs had deposited money with their bank in McIntosh on February 23, 1982, the cashier's check sent by that bank on behalf of plaintiffs was not received by the defendants' bank in Jackson until March 2, 1982, two days beyond the grace period allowed by the note. Accordingly, the defendants-sellers had acquired the option to declare the entire principal and accrued interest due and payable.
Thus, the question becomes whether the sellers accepted the payment, waiving their rights under the acceleration clause, when their bank in Jackson deposited the McIntosh bank's check in their account. Or, in other words, was the Jackson bank in the position of an agent with the power to accept payments made after the grace period had expired and thus bind its principals, the sellers?
Agency is a question of fact and, as such, it is subject to the ore tenus rule. Wood Chevrolet Co. v. Bank of theSoutheast, 352 So.2d 1350 (Ala. 1977). Although in its order the trial court made no specific finding regarding the agency status of the sellers' bank, the judgment denied plaintiffs relief. When the trial court does not make specific findings of fact, this court must, nevertheless, assume that the trial court found facts supporting its judgment, unless such a finding would be clearly erroneous and against the preponderance of the evidence. Lipscomb v. Tucker, 294 Ala. 246, 314 So.2d 840 (1975). The purchasers insist that the sellers' own evidence discloses opportunities to instruct their bank to reject late payments, opportunities of which the sellers did not avail themselves. On the other hand, the tendencies of Mrs. Lathan's evidence are that the sellers' bank did not have the authority to accept late payments after the expiration of the grace period. The evidence, therefore, made the agency of the sellers' bank an issue of fact on which the court's decree found in favor of the sellers. That decree is presumed correct. Farm Country Homes, Inc. v. Rigsby,404 So.2d 573 (Ala. 1981). Given the history of the parties' dealings, the terms of the promissory note and mortgage, and the special agreement concerning the process of payment from bank to bank, it is reasonable to conclude, in conformity to the trial court's conclusions, that the direct deposit arrangement did not constitute a waiver of the sellers' right to *Page 344 
accelerate the installments when a payment was made after the grace period. Subsequent payment after default by a mortgagor does not extinguish the mortgagee's right to declare a promissory note and mortgage due and payable. Parker v. Oliver,106 Ala. 549, 18 So. 40 (1895).
The plaintiffs also maintain that it was inequitable to allow the forfeiture of the plaintiffs' interest.
The defendants agreed to purchase the property for $64,200.00 over 16 years at 6% interest. The evidence was that as of May 31, 1982, the amount owed was $67,180.78; of this, $49,436.68 was attributable to principal. The bid-in price at foreclosure was $69,680.00. On the other hand, the record establishes that the purchasers were consistently in default on their note payments, although they cured the defaults within the grace period. This situation had led to prior court action between the parties which was resolved by the parties' agreement to the deposit arrangement. But even after this arrangement, the purchasers continued to be in default by not putting the necessary funds into their own bank at McIntosh until after the 10th day of each month. Thus, it was the purchasers who had a history of frustrating compliance with the payment arrangements. Under those circumstances, it was not improper for the trial court to deny equitable relief by refusing to set the foreclosure aside. Cf. Diveto v. Mid-State Homes, Inc.,279 Ala. 277, 184 So.2d 357 (1966).
The plaintiffs urge this Court to disallow to the mortgagees any unaccrued interest in the event the foreclosure sale is not set aside. Respectfully, we cannot presume to make such an order because that subject was not made an issue in the court below. The purchasers alleged only that the property was bid in by the mortgagees at $69,680.00, when the total indebtedness was only approximately $44,000.00, and then asked that the foreclosure sale be set aside. There was no contest of the amount payable under the mortgage and note, i.e., $67,180.78. There was no allegation requesting the court to fix a redemption amount, nor any evidence contradicting the amount owed. That issue cannot be raised on appeal for the first time.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.