Irving Glassman, Appellee, v. George F. Keller, Appellant.

Gen. No. 39,238.

Heard in the third division of this court for the first district at the December term, 1936. Opinion filed June 30, 1937.

LEDERER, LIVINGSTON, KAHN, ADLER & ADSIT, of Chicago, for appellant; HARRY H. KAHN and SIGMUND LIVINGSTON, of counsel.

RYAN, SINNOTT & MILLER and MAX KRAUSS, all of Chicago, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the defendant from a judgment in the sum of $35,000 entered by the court for the plaintiff in an action to recover damages for personal injuries sustained by Irving Glassman, a minor.

The complaint consists of two counts. Count one avers that the defendant was guilty of the following acts of negligence:

(a) So carelessly and negligently operated his motor truck that the bicycle of the plaintiff was caused to come in contact and collision with the same;

(b) Negligently drove said truck from an alley onto and across a sidewalk without sounding a horn or giving any other warning;

(c) Negligently operated the truck toward, up to and across the sidewalk line without keeping a reasonably careful lookout ahead;

(d) Negligently operated the said motor truck toward, up to and across the sidewalk line at a high, dangerous and excessive speed, contrary to and in violation of sec. 22, ch. 95a, Cahill's Ill. Rev. Stats. 1933.

Count two was withdrawn by the plaintiff.

The defendant denies each and every allegation of negligence and avers that the injuries which the plaintiff received as a result of the collision between his bicycle and the defendant's truck were the result of the plaintiff's own negligence and want of care on his part.

It appears from the facts upon which this action was based that Irving Glassman at the time of the accident was nine years, three months and thirteen days old. He lived with his parents at 237 North Lacrosse avenue in a building on the southeast corner. He was in the fourth grade at the Spencer School located on Maypole and La Vergne avenues, about three blocks distant from his home. He was a bright boy for his age and possessed mental capacities, and had experiences in ad-

vance of the average boy of his age. His marks in school were excellent before the accident, as well as at the time of the accident.

In going to and from school it was necessary for him to cross an alley and four streets. Plaintiff had had a bicycle for a period of a year or a year and a half, and was riding it at the time of the accident. He was familiar with the neighborhood where he lived, and had ridden the bicycle around the block almost every day, when the weather would permit. He would usually travel east on Fulton to Cicero, south on Cicero to Maypole, and west on Maypole to Lacrosse. Then he would go north again on Lacrosse back to the place from which he had started. In making this trip he would have to cross the alley where the accident occurred, and on April 14, 1935, the day of the accident, plaintiff left his home with his bicycle around 9:30 or 9:45 a. m. He took the usual route, went east on Fulton to Cicero and then traveled a block south on Cicero to Maypole. People were using the sidewalks, and when he arrived at Cicero and before he turned south he slowed down, and when he came to the corner of Maypole and Cicero, before he turned to go west on Maypole, he slowed down to see if there were any people there, so that he would not run into them. In riding his bicycle he went around the block and did not get off the sidewalk. When he left Cicero and was going west on Maypole, he was riding close to the building, and knew that there was an alley between Cicero and Lacrosse which intersects the sidewalk on the north side of Maypole. The bicycle plaintiff was riding is known as a junior bicycle, and on the day in question when this accident occurred, the pavement on Cicero avenue was undergoing repairs. The west side of the street was being broken up, although the movement of traffic on Cicero avenue was not interrupted. A trench had been dug part way across the intersection of Maypole and

Cicero avenues, so that it was not practicable for automobiles to turn from Cicero into Maypole. Plaintiff testified that at the time he approached the alley where the accident occurred, he listened for the warning of any vehicle that might be coming out of the alley; that he did not hear any noises or receive any warning of the approach of an automobile.

The truck in question was a large 10-wheel chain drive Sterling dump truck, weighing eight and one-quarter tons empty, and at the time of the accident was carrying a load of limestone screenings weighing 11½ tons, a total weight of 40,000 pounds.

The controverted question seems to be whether this truck made considerable noise while it was being operated. Several witnesses testified that they could hear the noise made by the operation of the truck from a distance of 30 or 40 feet to 150 feet. The truck being operated at the time of the accident was owned by the defendant, who was in the trucking business and engaged in hauling limestone screenings. The screenings being hauled were to be dumped at the corner of Maypole and Cicero avenues. The truck was driven north on Cicero avenue to the intersection of Maypole avenue, where the driver stopped to ascertain where his load should be dumped. It appears that one of the men working there motioned to him to go north on Cicero and around the block to the west, to get to Maypole avenue, where the load was to be dumped. The truck driver proceeded up to Fulton street, turned west, but instead of going to the next street started back south down the alley, half a block west of Cicero avenue. This alley was 16 feet in width, and was paved. The load of screenings was to be dumped in Maypole avenue just east of the alley. As we have stated before, this street was in the process of construction.

As plaintiff came to the alley, he slowed down a little, and just as he arrived at the edge of the alley, the

truck came out. No horn was blown. Defendant's driver of this motor truck testified that he operated the horn at the time, which testimony is contradicted by the plaintiff, who testified that he started to listen as he approached within five or ten feet of the alley; that he could see nothing and heard nothing until he was two or three feet from the alley. At that instant the truck shot out of the alley, directly in front of him, and about a foot from the wall of the building on the east side of the alley. The plaintiff, in order to avoid colliding with the truck, turned towards the left about a foot or so, but was unable to avoid the collision and turned into the center or rear of the left front fender of the motor truck. Plaintiff was thrown to the ground and the truck ran on until his leg was pinched under the rear wheel. The driver threw on his brakes, which squeaked loudly. The truck was equipped with two rear wheel mechanical brakes. After the accident, and while the truck was still standing there, an examination was made by witnesses, which disclosed skid marks, the east one being 4½ feet long, starting at the building line and extending south in the alley, the west one, 2½ feet in length, starting two feet south of the building line, but ending parallel with the one first described. The motor truck driver immediately after the accident looked out, but did not get off the seat, reversed and backed the truck, three to five feet. The plaintiff, who had been knocked off his bicycle by the force of the collision, was lying with his left hand on the chain drive of the truck. His thumb had already been cut off before the truck came to a stop, and when the truck was backed, plaintiff's hand was drawn into the sprocket, and the rest of it was cut off.

Eyewitnesses produced by the plaintiff testified that at the time of the accident the truck as it emerged from the alley was traveling at a rate of speed from 10 to 15 miles an hour.

The questions before us are solely ones of fact for a jury. However, in reviewing the case we shall consider the errors called to our attention, by the defendant and relied upon by him as justification for a reversal of the judgment.

Defendant contends that the truck did not run into the plaintiff, but the plaintiff ran with his bicycle into the side of the truck and collided approximately at the center of this motor truck.

From the evidence, the length of the truck appears to have been 20 feet, and at the time of the collision, the truck had passed approximately 10 feet of its length before the collision.

Counsel for the defendant cites a number of cases on the question of the rate of speed the motor truck was going at the time it passed over the sidewalk intersection at the place of the accident. This question is usually one of fact for a jury, and from an examination of the facts as they appear in the record, it was for the jury in this case to determine whether the truck was being operated at a rate of speed which would constitute negligent operation of the truck. The jury did so and found against the defendant, and we are of the opinion that there was sufficient evidence to justify the verdict of the jury. *Ziraldo v. Lynch Co.*, 365 Ill. 197.

As to defendant's contention that if there was failure to sound a horn and there was sufficient noise from this truck as it was being operated in the alley to warn the plaintiff of its approach, this too was a question of fact for the jury. While it is true that there was no evidence that plaintiff heard the noise or was given sufficient warning of the approach of the truck and failed to heed the warning as given and thus was guilty of negligence, this of itself would not justify the court in weighing the evidence for the purpose of determining whether or not the plaintiff heard the horn or warning of the approaching truck,

Whether or not the driver of the motor truck, in reversing the motion and backing the truck after the accident, was negligent, was also a question of fact for the jury. However, that this truck by reversing was backed, and as a result of this collision the boy was injured, is not disputed, and we are unable to say that plaintiff was guilty of contributory negligence such as would warrant this court in holding that he could not recover. In this court it is a question of whether the verdict of the jury upon which the judgment was entered is against the manifest weight of the evidence.

The defendant contends that the plaintiff was not in the exercise of due care for his own safety. This boy at the time of the accident was nine years and three months old, and he attended school. In attending school he had to cross street crossings. At the time of the accident he was in the fourth grade. He had been riding this bicycle for some time. He attended the Spencer School, where he had been one of the pupils for a period of a year and a half, and accompanied his younger brother, 6½ years of age, who attended the kindergarten in the same school. Sometimes he attended this school with a cousin who lived in the same building and attended the same school, and in coming and going to school, as we have before stated, he was obliged to pass over street intersections, as well as over this sidewalk intersection with the alley.

The rule of law applicable to boys and girls between the ages of 7 and 14 on the question of negligence is left to the jury to determine, taking into consideration the age, capacity, intelligence and experience of the child. *Maskaliunas v. Chicago & W. I. R. Co.*, 318 Ill. 142. As a general proposition, the question of contributory negligence, in other words, want of due care, is one of fact for the jury, taking into consideration all the facts and circumstances shown by the evidence. The court will act on a question of fact as a matter of law only

where no rational person would have acted as the injured person did, and the court would generally render a judgment for the defendant. *Kelly v. Chicago City Ry. Co.*, 283 Ill. 640.

While it is true the plaintiff was required to exercise the care required of one of his age, capacity, intelligence and experience, still there was a duty imposed upon the driver of the motor truck in question, which was to exercise care in operating his truck through the alley, especially when passing over the intersecting sidewalk at the place where this accident occurred.

The defendant in this case contends that the plaintiff was guilty of negligence as a matter of law, because of the violation of a sidewalk ordinance, or, in the alternative, that the jury should have been instructed to consider the alleged violation as a question of fact. The trial court held that the ordinance had no application. The instruction which was offered, and refused by the court, is as follows:

''2. The court instructs the jury that at the time and place of the accident in question, there was in full force and effect in the City of Chicago the following ordinance:

'' 'No person shall drive, push or draw any horse, wagon, cart, bicycle or other vehicle over any public sidewalk, or use, ride or drive any horse, wagon, sled or sleigh thereon, unless it be in crossing the same to go into a yard or lot where no other suitable crossing or means of access is provided, under a penalty of not less than One Dollar nor more than Ten Dollars for each offense.'

''You are further instructed that if you believe from the evidence that at the time and place in question the plaintiff was riding a bicycle on a sidewalk in the City of Chicago in violation of said ordinance, and if you further believe from the evidence that such violation of the ordinance proximately contributed to plaintiff's injuries, then the plaintiff would not be entitled to re-

cover in this case and you should find the defendant not guilty.''

The purpose of this refused instruction was to advise the jury that if it found that the plaintiff, a minor in this case, was riding a bicycle on the sidewalk in the City of Chicago in violation of said ordinance, and if the jury further believed from the evidence that such violation of the ordinance proximately contributed to the injuries of the plaintiff then the plaintiff would not be entitled to recover.

The rule of law by which the jury is guided, in passing upon the facts submitted and in determining whether a boy or girl between the ages of 7 and 14 is guilty of negligence, is that it shall take into consideration the age, capacity, intelligence and experience of the child. This direction was omitted from the offered instruction. The Supreme Court in the case of *Wolczek v. Public Service Co. of Northern Illinois,* 342 Ill. 482, states:

''In *Maskaliunas v. Chicago and Western Illinois R. Co.,* 318 Ill. 142, it was held that the statute making it a misdemeanor to climb upon a railroad car without permission does not apply to a child under the age of ten years unless the presumption of the common law rule was overcome by proof as to the physical and mental capacity of the child.'' Such being the rule, the instruction should have directed the attention of the jury to the fact that the ordinance — the subject of this controversy — did not apply to the plaintiff, who was of the age of 9 years and 3 months, unless the presumption of the common law rule was overcome by proof as to the physical and mental capacity of the child. The instruction as offered and refused did not comply with the rule we have outlined in this opinion, and therefore the court properly refused to give the instruction to the jury as presented by the defendant.

Counsel for the plaintiff argue and call our attention to the fact that the plaintiff was an infant of the age of

nine years and three months, and not bound by the provisions of the ordinance in question, since penal statutes have no application to a child under the age of ten years. Par. 620, ch. 38, Illinois State Bar Statutes 1935; Jones Ill. Stats. Ann. 37.552, provides:

"An infant under the age of ten years shall not be found guilty of any crime or misdemeanor." And the Supreme Court in *Maskaliunas v. Chicago & W. I. R. Co.*, 318 Ill. 142, heretofore referred to in this opinion, said:

"One of the principal contentions of appellant is that there is no evidence in the record tending to show that the absence of a fence along the right of way at the place in question contributed to or proximately caused the injury to appellee but that the evidence shows that the proximate cause of the injury was appellee's own act in climbing onto the moving train. Appellee being under ten years of age, the statute making it a misdemeanor to climb upon a railroad car without permission has no application to him. Notwithstanding this statute is general in its terms, it must be construed in connection with the statute declaring a child under the age of ten years *doli incapax*. (*McDonald v. City of Spring Valley*, 285 Ill. 52.)"

We believe that the rule announced by the court is a proper one to follow, and the trial court not having included in the instruction that the jury should take into consideration the age, capacity, intelligence and experiences of the plaintiff, the instruction was erroneous and the court was fully justified in refusing to give the same as presented by the defendant.

The defendant contends that plaintiff having failed to establish his case, the court erred in refusing the peremptory instruction to find the defendant not guilty. We must bear in mind that upon the question of whether the plaintiff was guilty of contributory negligence the court must consider the age of the plaintiff. Upon this question we again quote from the case of

*Maskaliunas v. Chicago & W. I. R. Co.,* 318 Ill. 142, where the Supreme Court said:

"The law is clearly established by great weight of authority, that between the ages of seven and fourteen the question of culpability of the child is an open question of fact and must be left to the jury to determine, taking into consideration the age, capacity, intelligence and experience of the child. (*Chicago and Alton Railroad Co. v. Becker, supra* (76 Ill. 25); *Lake Erie and Western Railroad Co. v. Klinkrath,* 227 Ill. 439; *City of Pekin v. McMahon,* 154 id. 141; *Rockford, Rock Island and St. Louis Railroad Co. v. Delaney,* 82 id. 198; *McEldon v. Drew, supra* (138 Ia. 390); *Lake Erie and Western Railroad Co. v. Mackey,* 53 Ohio St. 370, 41 N. E. 980; *City of Shawnee v. Cheek,* 40 Okla. 227, 137 Pac. 724; *Hepfel v. St. Paul, Minneapolis and Manitoba Railway Co.,* 49 Minn. 263, 51 N. W. 1049.) The question whether appellee was, under the circumstances, in the exercise of ordinary care for his own safety at and immediately prior to the time of the happening of the accident in question was properly submitted to the jury. *Union Pacific Railway Co. v. McDonald,* 152 U. S. 262, 14 Sup. Ct. 619; *Rasmussen v. Whipple,* 211 Mass. 546, 98 N. E. 592; *Lorance v. City of Ellensburgh,* 13 Wash. 341, 43 Pac. 20."

The defendant further contends that the argument of counsel for plaintiff was improper and prejudicial, and therefore erroneous. We have examined the quoted portions of the argument in the brief and are satisfied that the defendant's rights were not prejudiced by the ruling of the court upon the objections offered to the argument of plaintiff's counsel. We have considered the instructions elsewhere in this opinion and further comment is unnecessary.

The remaining question called to our attention is that the damages of $35,000 allowed by the jury and upon which allowance the court entered judgment is excessive. We must consider the age of the boy and

the nature of the injuries sustained by him. The principal injury was the crushing of the left hand, resulting in the loss of all the fingers of the hand. There were also injuries to the right leg. There was a puncture at the right great toe, a crushing wound over the front of the right ankle an inch and a half in diameter, a similar crushing injury over the outer surface of the right leg, about one by two inches in size, another injury over the right lower portion of the right thigh, about three by four inches in diameter, a marked swelling of the right ankle and foot, together with a fracture of the lower end of the right tibia, about one and one-half inches above the ankle joint. These wounds became gangrenous and sloughed away, and required frequent treatment and dressings for several months.

Plaintiff was in the hospital from April 14, 1934, until May 25, 1934. He suffered pain, both from his hand and leg, and still suffered pain and tenderness in the hand as well as in the foot. The circulation in the leg was impaired. However, the doctor was of the opinion the leg would eventually return to normal, but stated that there was absolutely no way to tell when that would happen; that it depended on the recovery of the circulation.

Plaintiff's doctor bill was $350; his hospital and nurse's bill was $356.50.

What would be a proper amount of damages in a case of this character is of course for the jury to determine, and this court will not consider the amount excessive unless it is not supported by the facts in the record, but from the facts as they appear in this case, we are of the opinion that the amount allowed is not such as would convince this court that there was lack of facts of the nature of the injuries to sustain the judgment for the amount. The judgment is accordingly affirmed.

*Judgment affirmed.*

Denis E. Sullivan, P. J., and Hall, J., concur.