Willard Moser, Jr., Minor, by Willard Moser, Sr., Next Friend, Appellee, v. East St. Louis and Interurban Water Company, and William Petzgoldt, Appellants.

## Term No. 44M6.

543

Heard in this court at the May term, 1945.　　Opinion filed August 16, 1945. Rehearing denied September 20, 1945.　Released for publication September 20, 1945.

ARTHUR W. PETH and C. C. DREMAN, both of Belleville, for appellants.

FARTHING, FARTHING & FEICKERT and JOHN R. SPRAGUE, all of Belleville, for appellee.

MR. JUSTICE BARTLEY delivered the opinion of the court.

This is a suit for damages arising out of a claim of Willard Moser, Jr., plaintiff appellee (hereinafter designated as plaintiff), a minor of the age of 12 years, for personal injuries sustained by him, by reason of being hit by a truck driven by William Petzgoldt, defendant appellant (hereinafter designated as defendant), on the evening of July 6, 1938, on North Twenty-eighth street, in the City of Belleville, Illinois, after appellee ran into the street while playing a game

with other children. A trial by jury resulted in a verdict of $7,500 in favor of the plaintiff.

The complaint of plaintiff consisted of two counts. The first count included as defendant the East St. Louis and Interurban Water Company, a corporation, as the alleged employer of the codefendant, William Petzgoldt. At the close of all of the evidence on the part of the plaintiff, the court allowed a motion of the defendant Water Company for a directed verdict, as to it, and no question is before the court as to this action.

The defendants filed separate answers to the complaint denying the material allegations thereof, which included a denial of the allegation that the plaintiff, at the time of the injury, was in the exercise of due care and caution for his own safety.

A trial by jury resulted in a verdict of $7,500 in favor of the plaintiff. A motion for new trial was duly filed and argued, and the motion was overruled. A motion for judgment notwithstanding the verdict was filed, argued, and overruled, and judgment rendered on the verdict for $7,500.

The only errors presented and argued by the defendant are that the plaintiff failed to prove that he was in the exercise of due care and caution for his own safety, and that the court erred in denying the defendant's motion for a directed verdict in his favor at the close of the plaintiff's case and at the close of all of the evidence, because it is said that as a matter of law, the plaintiff was not in the exercise of due care and caution for his own safety, as shown by the record. It thus appears from the issues as presented to this court, that the negligence of the defendant is admitted, that the negligence was the proximate cause of the injury is admitted, as is also the resulting damage, and that the amount awarded by the jury is within the range of the testimony. The only question, therefore, before the court is whether the record fails to show

that the plaintiff was in the exercise of due care and caution for his own safety.

The occurrence in question took place on North Twenty-eighth street in Belleville. This street runs north and south and is 24 feet wide from curb to curb. It was still daylight and plaintiff, with other children, was playing a game known as "5-10," which is rather vaguely described as being played as follows: "five-ten, no stop, no pushing, no running, red light halt, no steps."

The defendant was driving the truck in question in a southerly direction along the street in question and where the plaintiff and other children were playing about the sidewalk and in the front yards adjoining. In the same neighborhood, on the other side of the street, were three little girls sitting on the curb with their feet in the street, and it was because of this that the defendant says that he was driving in what he describes as the center lane of the 24-foot wide street. Plaintiff's testimony is to the effect that he took two steps from the grass and stopped about 4 feet from the east curb out in the street; that he looked to the south and saw no cars and then looked north, and in about a minute, saw a truck coming toward him about 60 feet away, and the next thing that he knew, he was struck without ever having moved from where he was standing. Defendant testified that he was driving a 1½-ton truck, Chevrolet model; that riding in the seat of the truck with him were his daughter and two grandchildren; that he was driving between 12 and 15 miles per hour; that he saw one boy run south and one run north, and still another (the plaintiff) run west with his head down, into the side of his truck, and that he immediately applied his brakes and stopped his truck in about 3 or 4 feet.

As a result of the occurrence, plaintiff received a compound fracture of the lower left leg at the junction of the lower third with the middle third, with both

bones broken and protruding through the skin, and extensive injury to the lower left leg and foot, which involved the soft tissues, which were mashed and severely damaged about the bone. Plaintiff was in the hospital from July 6 to September 10, 1938. The union of the fracture was good, although he has a slight limp and a slight shortening of his leg. There was considerable sloughing of the soft tissues of the ankle and of the heel and skin grafting was resorted to to cover the bare spot on the ankle where the skin had sloughed off down to the tendons. Hospital and doctors' bills amounted to $3,775.

The evidence is in dispute as to whether plaintiff ran into the defendant's truck, or whether the defendant's truck ran into the plaintiff. It is also in disagreement whether the truck veered to the left and how far distant the truck was traveling west of the east curb line, and how far west of the east curb line the truck was when it stopped. There is no dispute but what the truck was traveling at least to the extent of one half of its width east of the center line of the 24-foot street. The skid marks showed 17 inches on the pavement, and according to the testimony of the defendant, he skidded nearly all of the rubber off of his tires and almost ruined one of them.

As before stated, the plaintiff, at the time of the occurrence, was 12 years of age. He had reached the 6th grade in school, and had lived in the neighborhood for about two years.

As to the accountability of children for contributory negligence, Illinois follows the common-law rule that a child under the age of 7 years is conclusively presumed not to be responsible for his acts. Between the ages of 7 and 14, he is still so presumed to be, but this presumption might be overcome by proof of the intelligence and capacity of the child. (*Wolczek v. Public Service Co. of Northern Illinois*, 342 Ill. 482.) When proof is made of the age, capacity intelligence

and experience of the child between the ages of 7 and 14, the question of contributory negligence then becomes one of fact, which must be submitted to the jury to determine, taking into consideration the age, capacity, intelligence, and experience of the child. (*Maskaliunas v. Chicago & W. I. R. Co.*, 318 Ill. 142.)

In the case of *Maskaliunas v. Chicago & W. I. R. Co.*, 318 Ill. 142, commencing on page 149, the court said:

"Appellant's third point is, that there is no evidence in the record tending to show that appellee was in the exercise of ordinary care for his own safety at and immediately prior to the time of the happening of the accident in question, and that his injury is due wholly to his own negligence. This court has definitely decided that a child under the age of seven years is incapable of such conduct as will constitute contributory negligence; (*McDonald v. City of Spring Valley, supra* [258 Ill. 52]; *Richardson v. Nelson,* 221 Ill. 254; *Chicago, St. Louis and Pittsburg Railroad Co. v. Welsh,* 118 id. 572;) and the same rule is followed by other courts. (*McEldon v. Drew,* 138 Iowa, 390, 116 N. W. 147.) We have also held that when a child has attained the age of fourteen years there is no reason to excuse him from the same degree of care for his own safety which is required of an adult. (*Austin v. Public Service Co.,* 299 Ill. 112; *Walldren Express Co. v. Krug,* 291 id. 472; *Chicago and Alton Railroad Co. v. Becker,* 76 id. 25.) These rules established by the courts are derived from the common law rule which applies in criminal cases. Since, in reason, responsibility for one's acts depends upon the understanding rather than the age, there can be no fixed rule of age which will operate justly in every case, but, as is said by Bishop concerning the rule as applied to criminal conduct, 'An imperfect rule is practically better than none.' Therefore, while there has been some slight deviation in a few cases in the application of

the rule by this court, it is fairly well established by this court and courts of other jurisdictions that a child under seven years of age is conclusively presumed incapable of contributory negligence, and that in the case of ·a child above the age of fourteen years the same rule shall be applied to him in that regard as is applied to adults, his intelligence and experience being considered. The law is clearly established by great weight of authority that between the ages of seven and fourteen the question of culpability of the child is an open question of fact and must be left to the jury to determine, taking into consideration the age, capacity, intelligence and experience of the child. (*Chicago and Alton Railroad Co. v. Becker, supra; Lake Erie and Western Railroad Co. v. Klinkrath,* 227 Ill. 439; *City of Pekin v. McMahon,* 154 id. 141; *Rockford, Rock Island and St. Louis Railroad Co. v. Delaney,* 82 id. 198; *McEldon v. Drew, supra; Lake Erie and Western Railroad Co. v. Mackey,* 53 Ohio St. 370, 41 N. E. 980; *City of Shawnee v. Cheek,* 40 Okla. 227, 137 Pac. 724; *Hepfel v. St. Paul, Minneapolis and Manitoba Railway Co.,* 49 Minn. 263, 51 N. W. 1049.) The question whether appellee was, under the circumstances, in the exercise of ordinary care for his own safety at and immediately prior to the time of the happening of the accident in question was properly submitted to the jury. *Union Pacific Railway Co. v. McDonald,* 152 U. S. 262, 14 Sup. Ct. 619; *Rasmussen v. Whipple,* 211 Mass. 546, 98 N. E. 592; *Lorence v. City of Ellensburgh,* 13 Wash. 341, 43 Pac. 20."

In the case of *Deming v. City of Chicago,* 321 Ill. 341, the court, commencing on page 343, said:

"Plaintiff in error says that 'contributory negligence is the outstanding feature of this case.' The law is clearly established by great weight of authority that the question of culpability of a child between the ages of seven and fourteen is an open question of fact and must be left to the jury to determine, taking into

consideration the age, capacity, intelligence and experience of the child.''

From the foregoing decisions of the Illinois Supreme Court, it is clear that the question of whether the plaintiff was in the exercise of ordinary care was properly submitted by the court below to the jury for its consideration, and the question having been passed upon by the jury under the instructions of the court as to the law, this court would not be warranted in substituting its judgment unless it could say, as a question of fact, that rational persons would not differ on the question. (*Glassman v. Keller,* 291 Ill. App. 262; *Schwanz v. Sangamo Electric Co.,* 294 Ill. App. 395; *Kelly v. Chicago City Ry. Co.,* 283 Ill. 640.)

From a careful reading of all of the evidence in the case, we cannot say that the finding of the jury was unreasonable, or that the evidence does not support the finding of the jury that the plaintiff was in the exercise of due care and caution for his own safety, taking into consideration his age, capacity, intelligence and experience. The jury was fully and adequately instructed as to the law on the degree of care required on the part of the plaintiff, and the trial court has approved the action of the jury in finding the defendant guilty. The judgment of the circuit court will therefore be affirmed.

*Affirmed.*

STONE, P. J., dissenting: I am unable to reconcile my own conclusions in this case with those expressed in the majority opinion. I, therefore, respectfully dissent from said opinion.

The record discloses that the accident in question occurred on North Twenty-eighth street in Belleville. This street runs north and south and is 24 feet wide from curb to curb. It was still daylight, toward evening, and plaintiff with other children was playing a game known as "5-10," which is rather vaguely de-

scribed as being played as follows: "five-ten, no stop, no pushing, no running, red light halt, no steps." Plaintiff's testimony is to the effect that he took two steps from the grass and stopped about four feet from the east curb, out in the street; that he looked to the south and saw no cars, and then looked north and in about a minute saw a truck coming toward him, about 60 feet away and the next thing that he knew, he was struck.

Defendant testified that he was driving the truck in question in a southerly direction, in the center lane, as he described it, because of the fact that he had seen three little girls on the west side of the street with their feet in the street. He claims that he was driving between 12 and 15 miles an hour and is corroborated in this particular by several witnesses. His testimony is to the effect that he saw one boy run south and one run north and still another (the plaintiff) run west with his head down, running into the side of the truck. Defendant claims that he immediately applied his brakes and stopped his truck in about three or four feet. As a result of the accident plaintiff's leg was broken in two places, and there can be no question but what he sustained a serious injury. No question is raised here as to the excessiveness of the verdict.

Counsel for plaintiff rely upon the case of *Jones v. Standerfer*, 296 Ill. App. 145, in support of his contention that plaintiff was in the exercise of due care and caution for his own safety, when, as he claims, plaintiff took two steps into the street and waited for the truck to pass, and that he had a right to assume that traffic coming from the north, going south, would be on the west side of the street. In the *Jones* case plaintiff was struck by an automobile while she was crossing the street, after getting out of another automobile, on her way to work, at a factory on the opposite side of the street. There the court held that the statute did not impose the duty upon the pedes-

trian to yield a right of way, when an automobile was traveling on the wrong side of the street. However, in that case, plaintiff was rightfully in the street on her way to the opposite side of the street.

In the instant case it is an inescapable conclusion that the boy was apparently absorbed in the playing of the game and had no intention of crossing the street, or retracing his steps to the curb, and was not, as counsel claims waiting for the defendant's truck to pass. Plaintiff testified that in the playing of the game of ''5-10'' one of the other boys said ''No steps'' and he stopped where he was, four feet out from the east curbing. We infer, that according to the rules of the game, when that was said, plaintiff was supposed to stop where he was, regardless of where he was. In addition thereto, and distinguishing the facts in the *Jones* case from the instant case, Dolph Horhousen, who was 12 years of age at the time of the accident, being called for defendant, testified that he was a participant in the game and that plaintiff was two feet off of the curb, that witness called to him, asking him, ''Billy, are you going to play'' and plaintiff replied, ''I don't know'' and with that darted into the street, without looking. Betty Jane Pees, who was aged 12 at the time of the accident testified that she was one of the three little girls sitting on the west curb, and that plaintiff ran into the street and did not make any stop between the curb and the truck and ran into the truck. Doris May Poriot, another one of the little girls sitting on the curb, testified that while she did not see plaintiff come in contact with the truck, that she did see him run into the street.

The same degree of care to protect himself from injury by the traffic in a public street is required of a minor as of an adult where the minor is old enough to know the character of the traffic in the street in question and the danger from automobiles and other vehicles. *Walldren Express & Van Co. v. Krug*, 291

Ill. 472. It has been held repeatedly in this State that a minor even younger than plaintiff can be guilty of contributory negligence and is charged with the exercise of that degree of care that a person of his age, intelligence, capacity and experience would exercise under similar circumstances. *Soens v. Chicago W. & V. Coal Co.*, 160 Ill. App. 467; *Koehler v. Chicago City Ry. Co.*, 166 Ill. App. 571.

Plaintiff was a boy of 12 years at the time of the accident. He had reached the sixth grade in school and was presumed to be of average intelligence for one of his age. *Heimann v. Kinnare*, 190 Ill. 156. The automobile today is apparently an integral part of American life. The children of this generation are familiar, almost from infancy with their mechanism, their uses, and operation, and should be held to know the corresponding dangers, as a predominant factor in traffic on the streets of cities, much more so than the children of any previous generation. The plaintiff testified that he saw the truck approaching 60 feet away and certainly knew the danger of continuing to stand where he did in the middle of the block, four feet from the curbing, in the street, in apparent compliance with the rules of the game, which he was engaged in playing.

Appellee's testimony alone, it seems to me, makes his theory of due care unthinkable. From what he says he deliberately stood there and waited for the truck to hit him. He looked to the south and saw no car; in a minute he looked to the north and saw this truck coming about 60 feet away. The evidence is that the truck was going at the rate of about 12 miles an hour. All this boy had to do was take a step back and save himself an injury. Of course, this action might have reduced his percentage in the game and that would never do. It is said that he was where he had a right to be; that is granted, but much more is required of one seeking damage for the misconduct of

another. A man has a right to be in his own back yard, but does not have a right to tease his neighbor's dog until it jumps over the fence and bites him. He has a right to stand in his own back yard and watch a neighbor cut down a tree, but when the tree begins to fall in his direction he has no right to stand still and let it hit him and then claim damages from his neighbor.

All the other evidence is to the effect that this boy actually ran into this truck as it was traveling. Negligence is the doing of something which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person, guided by those circumstances which influence persons, would have done. Would any prudent person stand there watching an automobile 60 feet away and let it hit him? It seems to me that there is no ground for difference of opinion upon that subject.

I am very decidedly of the opinion that the court erred in not directing a verdict for the defendant in this case. In any event the verdict is against the manifest weight of the evidence and should be reversed on that ground.