614

ERIKSON, Administrator, Respondent, vs. WISCONSIN
HYDRO-ELECTRIC COMPANY, Appellant.

*March 5—April 3, 1934.*

For the appellant there was a brief by *Peterson & Slocumb* of Menomonie, and oral argument by *Ira O. Slocumb*.

For the respondent there was a brief by *Alexander Wiley* and *Robert L. Wiley,* both of Chippewa Falls, and oral argument by *Alexander Wiley*.

WICKHEM, J.   Defendant owned and operated a 6,900 volt, three-wire transmission line supported by cedar poles along the south side of an east-and-west road which passed in front of plaintiff's farm house.   Plaintiff's house was south of the highway, and the north wire of the transmission line passed between two feet four inches and two feet eight inches from the trunk of a tree, the variance depending upon the direction of the wind.   The limbs of the tree were

trimmed in the immediate vicinity of the wire. The lower branches of the tree were about five feet four inches from the ground. There was no warning sign upon the tree. The wires were not insulated, nor was there any sort of guard on the tree or the wires near the tree. There was a sign on a post carrying the wires and located twenty-nine feet from the tree, which read: "Danger—High Voltage."

Plaintiff was the owner of the farm upon which the wires and the tree were located, but did not live on the farm. He rented it to his adult son. On the day of the accident plaintiff had left deceased, aged eleven years, at the farm while he made a trip to town. While playing in the yard near the tree, deceased started to climb the tree and was ordered to keep out by the wife of the tenant. He later again climbed the tree to see a bird's nest, and while in the tree came in contact with the wire and was electrocuted.

· The first question is whether the evidence sustains the jury's conclusion that defendant was negligent. Defendant contends that this was a rural line and that insulation was impractical; that the tree was trimmed on the side nearest the wire so that it would be difficult for a person to climb up on that side of the tree; that the tree was so trimmed that a person climbing the tree would naturally climb on the opposite side of the tree and away from the wire; that the wire was twenty feet from the ground; that the tree was high, and that there was no practical means of giving other protection. The contentions cannot be sustained. Ordinarily the extent to which wires conveying deadly electric currents should be insulated or otherwise guarded is a jury question. *Parsons v. Charleston Consolidated R., G. & E. Co.* 69 S. C. 305, 48 S. E. 284; *Dumphy v. Montreal L., H. & P. Co.* [1907] A. C. (Eng.) 454, 9 Ann. Cas. 749. It is a jury question in this case whether it should not have been foreseen that a tree of this sort, with many low-hanging branches, readily climbed by youngsters, would attract a

child to climb into a position of peril. See note 14 A. L. R. 1032; *Graves v. Interstate Power Co.* 189 Iowa, 227, 178 N. W. 376; *Chickering v. Lincoln County Power Co.* 118 Me. 414, 108 Atl. 460. The electrical code, which was in evidence, provides as follows:

"Order No. 1214. To provide safety to the general public . . . . electrical supply line shall be arranged so as to provide adequate clearance from the ground or other space generally accessible, or shall be provided with guards so as to isolate them effectively from accidental contact by such persons."

It seems to us that it was easily within the province of the jury to conclude that the tree was not sufficiently trimmed; that it was not properly guarded to prevent its being climbed; that warning signs should have been placed upon the tree or the tree condemned and removed, and, finally, that the clearance between the wire and the tree was not sufficient. In connection with the last matter, it appears to have been provided by the code that in case of wires having the voltage that these wires had, the proper clearance from a building should be at least three feet.

It is next contended that deceased was guilty of contributory negligence. This also was a jury question. Deceased did not live on the premises; the tree offered no warning that it contained wires, and the admonition by the sister-in-law does not appear to have brought home to deceased any notice of danger from the wires, but apparently was the ordinary warning that a responsible adult usually gives to a child not to climb trees. While the father owned the land upon which the tree was located, he did not live there, and it cannot be said as a matter of law that he was negligent in leaving his child upon the premises for a short time without warning as to the wires. The child was left in the charge of an adult, and there is nothing in the record to show that the father as a matter of law should have antici-

pated that his son would climb the tree, or that conditions were such as would naturally bring the subject to his mind. This conclusion makes it unnecessary to consider whether under the pleadings the issue of plaintiff's negligence was properly raised.

It is next claimed that the damages are excessive. This is based upon the fact that, the son being only eleven years of age, there is no reasonable probability, especially having in mind the overproduction of man-power in this country, that the boy could have been financially productive to the father, in excess of the cost of keeping him until after he was twenty-one years of age; that the father had eight children older than this boy, none of whom had contributed anything to him; that the father's age was such that by the time deceased was twenty-one years of age nearly three years would have elapsed beyond the father's expectancy of life. We cannot agree that the pecuniary award is excessive. Plaintiff and his son appear from the evidence to have been very close companions, and while, of course, the pecuniary loss in all such cases is somewhat speculative, the attitude of the child to the parent offers some evidence of likelihood that the boy would be inclined to contribute to the support of his father, both before and after he was of age.

It is also objected that the damages of $2,500 for loss of society and companionship are excessive. This award was made under the authorization of sec. 331.04 (2), Stats., which provides:

"A sum not exceeding twenty-five hundred dollars for loss of society and companionship shall accrue to the parent or parents or husband or wife of the deceased.".

In *Cameron v. Union Automobile Ins. Co.* 210 Wis. 659, 246 N. W. 420, 247 N. W. 453, the court, in passing upon the award permissible under this section, stated:

"The amount allowable will depend on the characteristics of the deceased spouse, the susceptibility of the surviving

spouse to suffering, and the conduct and affection of the spouses towards each other. The amount named in the statute is not to be considered as indicating that $2,500 is adequate compensation for every or any loss of the kind that may be suffered, but as merely limiting the amount recoverable."

The facts here show a rather unusually close and affectionate relationship between the father and son. This may have been the result of the fact that plaintiff was a widower and that the rest of his children were fully grown. Whatever the reason, the record presents a very unusual degee of companionship between the father and son. Having in mind these relations, and the rule as stated in the *Cameron Case,* we conclude that the award cannot be disturbed.

*By the Court.*—Judgment affirmed.