39 So.2d 402

**ALABAMA POWER CO. et al. v. BOWERS.**

**6 Div. 769.**

Supreme Court of Alabama.

March 17, 1949.

50

London & Yancey, Geo. W. Yancey, Frank E. Lankford, and Martin, Turner & McWhorter, all of Birmingham, for appellants.

Taylor, Higgins, Koenig & Windham and J. Howard Perdue, Jr., all of Birmingham, for appellee.

STAKELY, Justice.

This is an action brought under the Homicide Act by John C. Bowers against Alabama Power Co. and Richard L. Scott for the wrongful death of the plaintiff's minor son, Bobby Ray Bowers, age twelve years and ten months. The boy was struck while riding his bicycle on a public highway by an automobile rented from a third party by Alabama Power Company and being operated by Richard L. Scott while on duty for his employer Alabama Power Company. The complaint is in one count of simple negligence to which the defendants filed a plea in short by consent. Trial of the cause resulted in a verdict and judgment for the plaintiff against the defendants for $15,000.

The accident happened on July 10, 1947, at about one o'clock P. M. on Alabama Highway No. 38 at a point approximately two and one-half miles north of Cleveland in Blount County, Alabama. The automobile driven by Richard L. Scott was travelling in a northerly direction on its right-hand side of the highway. Just prior to the accident Bobby Ray Bowers had been riding his bicycle in a southerly direction on his righthand side of the same highway, following, according to tendencies of the evidence, closely behind a truck driven by Clifton Grigsby which was also proceeding in a southerly direction on its righthand side of the highway.

The home of the plaintiff is situated on the east side of the highway. Bobby Ray Bowers immediately prior to the accident turned his bicycle to the left across the highway, apparently to go to his home. The paved portion of the highway at this point is 22 feet in width. The boy died as a result of the injuries which he sustained at the time of the collision.

Just south of the plaintiff's home is a driveway, about 14 feet wide, extending back from the highway, and at a point about 2 feet north from the north side of plaintiff's home is a little pathway which the boy had made for his bicycle, extending from the highway toward the house. The truck and the automobile met and

started passing each other at about the driveway to the south of the house. Tendencies of the evidence showed that the boy turned at about the entrance to the pathway. According to answers of Richard L. Scott to interrogatories propounded to him by the plaintiff, which the plaintiff introduced in evidence, "The bicycle was cutting diagonally across the highway, directly in front of the automobile I was driving and was proceeding in an easterly direction. When I first saw the bicycle it was about one foot over the center line to my left and across the center of the road, directly in front of the automobile I was driving, coming out from behind the truck to my left." The speed of the car driven by Richard L. Scott was variously estimated by the witnesses. According to their respective estimates the speed of the car varied from 40 to 50 miles per hour, from 55 to 60 miles per hour and from 70 to 80 miles per hour.

The highway is a blacktop highway. Richard L. Scott testified that he applied the brakes on the automobile when he first saw the boy on the bicycle. The automobile was equipped with 4-wheel hydraulic brakes which were in good working condition. Following the application of the brakes the tires of the automobile left skid marks upon the highway. Tendencies of evidence showed that the skid marks started at a point about 6 feet south of the south edge of the driveway, that the skid marks continued up the highway gradually going off toward the edge of the pavement to a point in close proximity to the pathway, which has been referred to, and then gradually came back on the pavement. Tendencies of the evidence showed that the distance from where the skid marks started to the pathway was about 65 to 80 feet. Tendencies of evidence showed that after the collision the body of the child was lying 40 to 50 feet north of the pathway about 6 feet off the highway. Tendencies of evidence further showed that the automobile travelled 10 to 30 feet past where the boy's body lay before the automobile stopped. One witness estimated the over all length of the skid marks as being approximately 170 feet.

There was no direct evidence as to how fast the boy was travelling on his bicycle. He was travelling, however, along the highway close behind the truck and tendencies of evidence showed that the truck was moving around 25 miles per hour. Tendencies of evidence showed that the boy was knocked through the air at a height of about as high as a man's head.

The only evidence in the case as to the degree of intelligence of the minor, Bobby Ray Bowers, is shown by the following questions and answers.

"Q. He was a smart, intelligent boy, wasn't he? A. He was just a normal child.

"Q. Just a normal child? A. Yes, sir.

\*    \*    \*    \*    \*    \*

"Q. You didn't mean to infer that he had finished the seventh grade? A. No, sir. He would have been in the seventh grade that coming fall, if he had lived."

Assignments of error 1, 2, 3, 4, and 5. These assignments of error are based respectively on the refusal of written charges requested by the defendants. There is no need to set out the charges since it seems to be understood that the charges raise the question which we shall proceed to discuss. The rules of the road which appear in Chapter 1, Title 36, Code of 1940, define a "vehicle" as including a bicycle. § 1(a), Title 36, Code of 1940. It is claimed that Bobby Ray Bowers in turning to his left on the highway before giving a signal visible to the driver of the automobile was in violation of § 17, Title 36, Code of 1940, and that he also violated § 9, Title 36, Code of 1940. It is earnestly insisted that since these statutes provide no exceptions, the principles of law which generally relate to the determination of contributory negligence of children become inapplicable where a child violates the statute and such violation is a proximate cause of his injury. It is argued that in such a situation, the child is guilty of contributory negligence as a matter of law and recovery is barred. There appears to be authority to sustain this view. D'Ambrosio v. City of Philadelphia, 354 Pa. 403, 47 A.2d. 256, 174

A.L.R. 1166; Query v. Howe, 273 Mass. 92, 172 N.E. 887; Sagor v. Joseph Burnett Co., 122 Conn. 447, 190 A. 258. However there seems to be authority to the contrary. Michalski v. Gaertner, 53 Ohio App. 341, 5 N.E.2d 181; Glassman v. Keller, 291 Ill. App. 262, 9 N.E.2d 589. The authorities are collected and analyzed in 174 A.L.R. 1170. See also Eckhardt v. Hanson, 196 Minn. 270, 264 N.W. 776, 107 A.L.R. 1.

■ But whatever may be the rule in other jurisdictions Alabama is committed to the doctrine that when the minor is between the age of 7 and 14, he is prima facie not capable of being guilty of contributory negligence, even though he violated a statute or ordinance and even though such acts did contribute to his injury. This is not a conclusive presumption, however, and may be rebutted by alleging and proving that the minor possessed that discretion, intelligence and sensitiveness to danger which the ordinary child possesses when he is fourteen years of age. Jones v. Strickland, 201 Ala. 138, 77 So. 562. See Graham v. Werfel, 229 Ala. 385, 157 So. 201. The case of Alabama Lumber & Building Material Ass'n v. Mason, 230 Ala. 168, 160 So. 232, is not contrary to the foregoing statement since there was no showing in that case that the minor was under the age of fourteen.

■ The testimony with reference to the intelligence of Bobby Ray Bowers has been set out. There was no proof that he had the discretion, intelligence and sensitiveness to danger which is possessed by the ordinary child of fourteen years. Hence charges on which the present assignments are based were refused without error.

Assignments of error 6, 7 and 8. These three assignments of error are predicated upon the refusal of the court to give to the jury, respectively, charges 21, 30 and 31.

■ There was no error in refusing these charges. They are involved and tend to be misleading and if they are substantially in accordance with charge J, which was held good in Louis Pizitz Dry Goods Co. v. Cusimano, 206 Ala. 689, 91 So. 779 (see McGough Bakeries Corporation v.

Reynolds, 250 Ala. 592, 35 So.2d 332), they are in substance covered by written charges 23 and 39 given by the court.

■ Assignment of error 22. There was no error in the action of the court in refusing to give the affirmative charge for the defendants. Tendencies of the evidence showed that the automobile which struck the boy was being operated at a high and reckless rate of speed at the time of and just before the accident. Tendencies of the evidence showed that the physical facts corroborated the testimony of witnesses in this regard. The automobile was being so driven on a public highway at a time when it was meeting and passing another vehicle and in proximity to a house where people were living with a private roadway entering the public highway. The jury had the right to find under these tendencies of evidence that the operator of the automobile was not driving the car as a reasonably prudent man would drive under the circumstances. Accordingly the case was a case for the jury. White Swan Laundry Co. v. Wehrhan, 202 Ala. 87, 79 So. 479.

■ Assignments of error 13 through 21 inclusive. . These assignments are based on statements made by counsel in argument to the jury or in colloquy between counsel and the court, which are claimed to be prejudicial and productive of ineradicable bias in the minds of the jury. It is argued that these statements were made to engender sympathy by the jury for the father by referring to the father's loss of his son at an early age, by referring to the father kneeling over his child at the roadside, dying in his own blood and by stating that the little 12 year old boy who is dead and buried 6 feet under the ground in the cemetery would be the best witness as to how the accident happened, if he were alive. As was pointed out by Mr. Chief Justice Gardner in Alabama Great Southern R. Co. v. Swain, 248 Ala. 535, 28 So.2d 714, in passing on a question of this kind, while we may disapprove the method pursued in argument, we should keep in mind that the rights of parties are involved which must be respected. There is no claim here that the amount of the verdict was excessive

and therefore indicative of bias, but apart from this, we are not satisfied that a reversal is in order. The court strongly and emphatically instructed the jury that the case was to be decided on the law and the evidence and that sympathy could have no place in their consideration of the case. In each instance objection to the statement was sustained and the jury was instructed by the court to disregard the statement of counsel. But in addition to this the statements of counsel for the plaintiff were in reply to previous statements of counsel for the defense by which it seems that sympathy was sought to be engendered for the defendant Richard L. Scott, by referring to his terrible experience in running into the boy and the suffering which the accident caused him to endure, and in saying how "my heart goes out to that man there who killed the child." In the case of Hanners v. State, 147 Ala. 27, 41 So. 973, 975, this court said:

"* * * In view of the remarks of defendant's counsel in his speech to the jury, we are unwilling to affirm that the remarks of the solicitor in reply thereto should have been excluded. It may be admitted that the prosecution had the right to have the remarks of opposing counsel excluded, Crawford v. State, 112 Ala. 1, 21 So. 214, but this not being done, the right to reply to them cannot be seriously doubted, upon the same principle often recognized by this court that illegal evidence may be rebutted by evidence of the same character. The court committed no error, therefore, on this point."

See Tea Java Coffee Co. v. Saxon China Co., 207 Ala. 33, 91 So. 885; McQueen v. Jones, 226 Ala. 4, 145 So. 440.

Under all the circumstances we are not persuaded that ineradicable bias was created in the minds of the jury. Alabama Great Southern R. Co. v. Swain, supra. The court overruled a motion for a new trial based, among other things, on the proposition of ineradicable bias. In passing on questions of this kind "much must be left to the enlightened judgment of the trial court, with the usual presumptions in favor of the rulings made to that end."

Pacific Mutual Life Ins. Co. v. Green, 232 Ala. 50, 166 So. 696, 697.

We conclude that the judgment of the lower court should be affirmed.

Affirmed.

BROWN, LIVINGSTON, LAWSON, and SIMPSON, JJ., concur.