306 So.2d 236

**ALABAMA POWER COMPANY**

v.

**Ivy LaDonna TAYLOR, a minor, etc.**

**SC 783.**

Supreme Court of Alabama.

Jan. 9, 1975.

---

1. See 11 Wright & Miller, Federal Practice and Procedure: Civil, § 2815, p. 99.

Balch, Bingham, Baker, Hawthorne, Williams & Ward, James O. Spencer, Jr., Birmingham, and J. B. Blackburn, Bay Minette, for appellant.

Cunningham, Bounds & Byrd, Mobile, for appelleee.

BLOODWORTH, Justice.

This is an appeal by defendant Alabama Power Company from a judgment and jury

verdict of $200,000 for personal injuries, rendered in favor of Ivy LaDonna Taylor, a minor, ten years of age, who sues by and through her mother and next friend, Cherry Ann McCormick. Mrs. McCormick also brought a derivative suit to recover medical expenses incurred on behalf of her daughter. See SC 755, Cherry Ann McCormick v. Alabama Power Company, wherein on Mrs. McCormick's appeal from trial court's judgment reducing the jury verdict in her favor, the judgment is reversed. [1975], 293 Ala. 481, 306 So.2d 233.

The complaint is in five counts. The first four counts charge in essence that Alabama Power Company negligently caused or allowed or maintained uninsulated high-voltage power lines or negligently failed to insulate high-voltage power lines, in that said lines were allowed to be in or dangerously near a tree which, by the exercise of reasonable care, it should have known was frequently climbed by children and that as a proximate result of defendant's negligence, plaintiff was injured and damaged by coming in contact with said lines. Count five charges wantonness in the maintenance of the uninsulated wires.

At the conclusion of the evidence, both parties moved for directed verdicts. The trial judge granted Alabama Power's motion for a directed verdict as to the wanton count and granted plaintiff's motion for a directed verdict as to all four negligence counts. After instructions from the court, the jury retired and assessed LaDonna's damages at $200,000. Following the jury verdict and judgment thereon, Alabama Power Company moved for a new trial, or, in the alternative, for judgment notwithstanding the verdict. When the motion was overruled, this appeal then ensued.

Alabama Power Company's arguments on appeal are directed to three grounds of its motion for new trial.

I

Prior to trial, Alabama Power Company took the deposition of one Robert L. Jenkins, a consulting engineer and resident of Baldwin County. At the taking of this deposition, each party was represented by counsel and each had the opportunity to examine the witness. Mr. Jenkins was subpoenaed for the trial but failed to appear. Initially, the trial judge indicated that Jenkins' deposition would not be admitted in evidence as part of the plaintiff's case in chief. On the following day, however, the court changed its ruling and the deposition was admitted. (Mr. Jenkins was then either in Birmingham or Atlanta.) Alabama Power Company vigorously objected to the use of the deposition and moved for a continuance until such time as Mr. Jenkins could be available. The trial judge's denial of the continuance is assigned as error.

Rule 32(a)(3)(B), Alabama Rules of Civil Procedure, makes the deposition of a nonparty witness admissible against any party represented at the taking thereof for any purpose when " * * * the witness is at a greater distance than 100 miles from the place of trial * * * unless it appears that the absence of the witness was procured by the party offering the depositions."

It is not disputed that the witness Jenkins was more than 100 miles from the place of trial when the deposition was offered. Alabama Power Company had the opportunity to examine him when he was deposed. No contention is made that the witness' absence was procured by the plaintiff. Therefore, it is clear that under Rule 32(a)(3)(B), Alabama Rules of Civil Procedure, the deposition was admissible. As we perceive it, the very purpose of the rule is to prevent the need for a continuance.

As this Court has heretofore written:

"We have repeatedly held that a motion to postpone a trial is addressed to the sound judicial discretion of the trial court and its refusal to allow a continuance is not reviewable here except for

gross abuse. (Citations omitted.)" Arant v. Grier, 286 Ala. 263, 239 So.2d 188 (1970).

Alabama Power Company made no showing that the witness would testify differently, or as to other facts, if he testified in person. We do not find that the trial judge abused his discretion in this case. To the contrary, we believe he was justified in proceeding with trial and allowing the deposition of the witness to be used.

## II

After the jury had been deliberating on the issue of damages some period of time, the following occurred:

"REPORTER'S NOTE: The jury * *) * returned to the Court room to ask a question.

"THE COURT: Ladies and gentlemen of the jury, I just asked the Bailiff to bring you in to see if there was any question I might could answer that might help you. You have been out an hour and a half. Who is the foreman?

"REPORTER'S NOTE: A juror holds up hand.

"THE COURT: Do you have a question?

"FOREMAN: They would like to know if the figure we arrive at will be the total figure, or if there will be some expense. Do we have to figure this sum or do we consider the sum we arrive at will not be the total amount arrived at for the child. Can we get this sort of answer?

"THE COURT: I don't know this is something for you to consider, but you know the Lawyers will have to be paid.

"A JUROR: There is some question and we thought it might help reach a decision.

"THE COURT: That is all I can tell you—that the Lawyers will have to be paid. I am going to give you a little while—we have spent two days on the case and I would like to conclude it if we can.

"THE JURY RETURNS TO CONTINUE DELIBERATION—"

▮ In a personal injury action, the plaintiff's attorneys' fees are not part of plaintiff's legal damages. Clark v. Exchange Ins. Ass'n, 276 Ala. 334, 161 So.2d 817 (1964). Therefore, Alabama Power assigns as error the giving of this "instruction" and contends that it resulted in an excessive verdict.

It will be noted from the record that Alabama Power Company did not object to the giving of this "instruction" and, therefore, Rule 51, Alabama Rules of Civil Procedure applies. It is, in pertinent part, viz.:

"* * * No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection. * * *"

Having failed to object, appellant cannot now complain. Stated simply, this Court reviews "rulings" made by the court below. In such an instance as here, when a party fails to object, and thereby invoke the ruling of the trial court, nothing is preserved for our review.

At oral argument, Alabama Power Company, in order to excuse its failure to object, alluded to Rule 46, Alabama Rules of Civil Procedure, which provides:

"Formal *exceptions* to rulings or orders of the court are unnecessary; but for all purposes for which an *exception* has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action

which he desires the court to take or his *objection* to the action of the court and his grounds therefor; and, if a party has no opportunity to *object* to a ruling or order at the time it is made, the absence of an *objection* does not thereafter prejudice him." (Emphasis supplied.)

This rule merely abolishes the need for formal "exceptions" while reiterating the need for an "objection." Only if a party has no opportunity to object, does the rule excuse the absence thereof. Alabama Power Company does not contend in brief, nor did it contend at oral argument, that it had no opportunity to object. Thus, we conclude there is no reversible error in the assignment of error directed to the trial court's remark as to attorney's fees.

### III

Finally, Alabama Power Company argues that the giving of the directed verdict for plaintiff on the negligence counts was erroneous in three respects: (1) That since plaintiff had the burden of proof, the trial judge should have hypothesized his direction to the jury to return a verdict for plaintiff on the jury's belief of the evidence, citing McHugh v. Harrison, 266 Ala. 138, 94 So.2d 756 (1957); (2) That there was a scintilla of evidence from which the jury could have found that Alabama Power Company was not negligent; (3) That there was a scintilla of evidence from which the jury could have found that the minor plaintiff was guilty of contributory negligence. We will speak to each of these arguments in detail.

### (1)

Rule 50(a), Alabama Rules of Civil Procedure, provides inter alia:

"* * * The order of the court granting a motion for a directed verdict is effective without any assent of the jury."

Rule 50(e), Alabama Rules of Civil Procedure, provides:

"* * * The demurrer to the evidence, the motion to exclude the evidence, and the *affirmative charge with* or *without hypothesis, are hereby abolished.* The court may direct a verdict, or enter judgment in accordance with the motion for directed verdict, or enter judgment notwithstanding the verdict under this rule, *whether or not the party making the motion has the burden of proof, in accordance with the scintilla evidence rule."* (Emphasis supplied.)

Thus, the former procedure of giving an affirmative charge with hypothesis has been abolished. If a trial judge decides there is not a scintilla of evidence upon which the jury could reasonably reach a verdict for a defendant, he can direct the verdict without submitting the credibility of the witnesses to the jury if their testimony is uncontradicted and unimpeached. In such case the direction of the verdict is effective without the assent of the jury.

An excellent discussion of the new directed verdict rule, and a comparison with the affirmative charge procedure is found in the Committee Comments to Rule 50:

"The motion for a directed verdict at the close of all the evidence will be in all respects a substitute for the peremptory charge. Under Rule 50, a motion for a directed verdict will be granted or denied in any situation where the peremptory charge would be granted or denied under present Alabama law. See McElroy, The General Affirmative Charge with Hypothesis, 1 Ala.L.Rev. 151, 152 (1948).

"Alabama has also had a somewhat unique procedure known as the 'affirmative charge with hypothesis.' Where the party having the burden of proof has made out his case by uncontradicted testimony, the case is sent to the jury but with a special direction that 'if the jury believe the evidence, it must find for the

plaintiff.' Allen v. Southern Coal & Coke Co., 205 Ala. 363, 87 So. 562 (1921). In federal courts and in most states, the case is not submitted to the jury under the circumstances described; instead the court directs a verdict. Rule 50(a) last sentence clearly provides that the order granting a motion for a directed verdict is effective without any assent of the jury. This eliminates the illogical ritual required under former practice. But the differences between the former Alabama procedure and that followed elsewhere are not as great in practice as they are in theory. Most judges regard the affirmative charge with hypothesis as a form of peremptory and give it in such a fashion as to be construed as a peremptory charge by the jury. McElroy, The General Affirmative Charge with Hypothesis, 1 Ala.L.Rev. 151, 152 (1948). And if the jury finds a verdict contrary to the affirmative charge with hypothesis, the verdict must be set aside as contrary to the instructions of the court. Piedmont Fire Ins. Co. v. Tierce, 245 Ala. 415, 17 So.2d 133 (1944); Penticost v. Massey, 202 Ala. 681, 81 So. 637 (1919). *Thus while the affirmative charge with hypothesis submits the credibility of the witnesses to the jury, in effect the jury is not permitted to disbelieve the witnesses.* In practice the jury is not allowed to disbelieve the witnesses, and in theory there is no reason why they should be. *'If the testimony delivered upon the trial is unimpeached, either by the manner of the witness, his knowledge of the facts, his connection with the parties or by contradictions, or for some other legal reason, the jury must treat it as true. * * ** Any other course would imperil the fairness and impartiality of the trial.' Crawford v. State, 44 Ala. 382, 386 (1870). For the reasons outlined, Rule 50(d) abolishes the affirmative charge with hypothesis." (Emphasis supplied.)

Under the federal rule (from which our rule is copied), a majority of courts hold that the trial judge, on motion for directed verdict, may accept as true the uncontradicted and unimpeached testimony from *disinterested* witnesses. 9 Wright and Miller, Federal Practice and Procedure § 2527, p. 561 (1971). Some federal courts have held that the jury must determine the credibility of uncontradicted and unimpeached testimony of interested witnesses but in other circumstances the same courts have held that even this testimony must be believed. 9 Wright and Miller, Federal Practice and Procedure § 2527, p. 562 (1971). The United States Supreme Court has expressed the rule thusly:

"It is true that numerous expressions are to be found in the decisions to the effect that the credibility of an interested witness always must be submitted to the jury, and that that body is at liberty to reject his testimony upon the sole ground of his interest. But these broad generalizations cannot be accepted without qualification. Such a variety of differing facts, however, is disclosed by the cases that no useful purpose would be served by an attempt to review them. In many, if not most, of them, there were circumstances tending to cast suspicion upon the testimony or upon the witness, apart from the fact that he was interested." Chesapeake & O. Ry. Co. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed. 983 (1931).

In the instant case two interested witnesses testified, the minor plaintiff and her mother. None of the testimony of the mother was relevant to the issue of Alabama Power Company's negligence. Alabama Power Company does not argue that the minor plaintiff's testimony that she climbed the tree and touched the wire is not to be believed. Such facts were stipulated to by Alabama Power Company in the pre-trial order. Alabama Power Company did not even cross-examine her. Furthermore, in the view we have taken of the case, the physical evidence and the uncontradicted and unimpeached testimony of distinterested witnesses was sufficient with-

out the testimony of the minor plaintiff to justify a directed verdict on the issue of Alabama Power Company's negligence. As will be shown hereinafter in detail, there was no issue of contributory negligence in this case because of the lack of evidence to rebut the presumption that the ten-year-old plaintiff was incapable of contributory negligence. Thus, there was no jury issue of credibility as to the testimony of the minor plaintiff.

Assuming that the case was otherwise a proper one for the giving of a directed verdict, the trial court did not err in failing to condition the directed verdict for plaintiff on the jury's belief of the evidence.

### (2)

As is expressly set out in Rule 50(e), the "scintilla" rule is preserved as the standard by which the trial judge must determine the propriety of granting a motion for directed verdict. As this Court has often said:

"* * * it is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court. Unless the evidence is free from doubt or adverse inference, the question is for the jury. Alabama Power Co. v. Guy, 281 Ala. 583, 206 So.2d 594. Where the affirmative charge [now directed verdict] is requested, the entire evidence must be viewed in a light favorable to the opponent. When a *reasonable inference* may be drawn, which is adverse to the party requesting the charge, the charge is properly refused. (Citations omitted.)" (Emphasis supplied.)

\* \* \* \* \* \*

"[13] In civil cases, a question must go to the jury, if the evidence, or any reasonable inference arising therefrom, furnishes a mere gleam, glimmer, spark, the least particle, the smallest trace, or a scintilla in support of the theory of the complaint. (Citations omitted.) * * *." Kilcrease v. Harris, 288 Ala. 245, 259 So.2d 797 (1972).

A defendant as well as a plaintiff is entitled to the benefit of the scintilla rule. McHugh v. Harrison, 266 Ala. 138, 94 So. 2d 756 (1957).

Whether or not the scintilla rule requires a given case to go to the jury is dependent upon the substantive law. The controlling principles applicable to the facts of this case are found in Blackwell v. Alabama Power Company, 275 Ala. 123, 152 So.2d 670 (1963), an opinion authored for this Court by Justice Coleman:

"It has been stated that an electric company maintaining a dangerous wire through or near a tree is bound to anticipate that persons may lawfully climb the tree, to exercise due care to prevent injury to such persons from its wire, and to keep such wires insulated in places where children climbing the tree will come into contact with the wire. Curtis on Law of Electricity, § 512. The statement is supported by decisions of this court and other courts.

"In affirming judgment for plaintiff, the Mississippi court said:

'* * * The immemorial habit of small boys to climb little oak trees filled with abundant branches reaching almost to the ground is a habit which corporations stretching their wires over such trees must take notice of. * *' Temple v. McComb City Electric Light & Power Co., 89 Miss. 1, 42 So. 874, 875, 11 L.R.A.,N.S., 449.

"The Pennsylvania court said:

"'"* * * 'The company, however, which uses such a dangerous agent (a wire charged with an electric current), is bound not only to know the extent of the danger, but to use the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity to its wires and

liable to come accidentially or otherwise in contact with them.' In this carefully chosen language, quoted and adopted in Daltry v. Media Electric Light, etc., Co., 208 Pa. 403, 57 A. 833, our highest judicial tribunal has plainly defined the measure of the defendant's obligation and described the class to every member of which the law extends the protection that would be secured by the faithful discharge of that obligation. Why was not the plaintiff in that class? Upon what theory can the defendant successfully contend that he was not 'lawfully in proximity to its wires'? Upon what principle of law or reason may it rest the claim that this boy was bound to repress the natural and wholly innocent impulse to climb up among the shady branches of the tree on a summer afternoon, to the end that it should be relieved of its obligation to remove or repair its dangerous wire? We can discover none." ' Mullen v. Wilkes-Barre Gas & Electric Co., 229 Pa. 54, 77 A. 1108, 1109.

"In an action for wrongful death of a twelve-year-old boy, killed by contact with an electric wire while he was climbing a tree, the North Carolina Court affirmed the judgment for plaintiff and approved the rule stated above. Benton v. North Carolina Public Service Co., 165 N.C. 354, 81 S.E. 448.

"The Missouri Court approved the following statement:

" ' "Several cases are cited by plaintiff, and we think that such declare the law correctly, that electric companies stringing highpower wires along streets and alleys through or in close proximity to trees of such character and location that boys, following their natural adventuresome tendency, are apt to climb same, must use the high care imposed on them to keep such wires in a safe condition. The high degree of care required of persons handling so dangerous an agency as electricity applies, we think, to the question of anticipating that children, and especially boys, are likely to indulge in the sport of climbing trees and going into somewhat dangerous and unusual places. * * *" ' Thompson v. City of Slater, 197 Mo. App. 247, 193 S.W. 971, 974."

*      *      *      *      *      *

"The Wisconsin Court said:

" 'The first question is whether the evidence sustains the jury's conclusion that defendant was negligent. Defendant contends that this was a rural line and that insulation was impractical; that the tree was trimmed on the side nearest the wire so that it would be difficult for a person to climb up on that side of the tree; that the tree was so trimmed that a person climbing the tree would naturally climb on the opposite side of the tree and away from the wire; that the wire was twenty feet from the ground; that the tree was high; and that there was no practical means of giving other protection. The contentions cannot be sustained. Ordinarily the extent to which wires conveying deadly electric currents should be insulated or otherwise guarded is a jury question. (Citations Omitted.) It is a jury question in this case whether it should not have been foreseen that a tree of this sort, with many low-hanging branches, readily climbed by youngsters, would attract a child to climb into a position of peril. * * *' Erikson v. Wisconsin Hydro Electric Co., 214 Wis. 614, 254 N.W. 106, 107.

"The Texas Court said:

" '* * * It is a matter of common knowledge that it is the natural inclination and venturesome disposition of children, and especially boys, to climb trees and to play among the limbs, and we think it is well settled that a company, stretching electric wires in a city or town through and among the limbs

of trees like the evidence shows the tree in this case to have been situated as it was, must take notice of boyish inclinations and impulses to climb, and anticipate the probability of the presence of children in such trees and the possibility of their coming in contact with the wires and suffering injury thereby. (Citations Omitted.) Multiplied cases supporting the principle announced could be cited.' Texas General Utilities Co. v. Nixon (Tex.Civ. App.), 81 S.W.2d 250, 253.

"The Michigan Court said:

" 'In our opinion the negligence of the defendant company also presents a question of fact. It is charged with knowledge that plaintiff and family lived upon the land where the tree was growing; that children are fond of climbing trees and especially those trees that bear nuts; that its wires were not insulated as they passed over the trees; that the tree was not sufficiently trimmed, so that in shaking the limbs it was possible to contact the live wires; and whether the defendant company used the proper degree of care was for the jury to decide.' Lamb v. Consumers Power Co., 286 Mich. 228, 281 N.W. 632, 636.

"In every case cited to us by appellant or appellee, in which a boy climbing a tree was injured by contact with a wire carrying electricity, the court held in accord with the above cited cases. In an Alabama case involving injury from contact with electric wire by a person climbing a tree, there an adult, this court said:

" 'We approve as sound the following rules of law, which are well settled by the most authoritative decisions in this country:

" '1. "The duty of an electric company in conveying a current of high potential, to exercise commensurate care under the circumstances, requires it to insulate its wires, and to use reasonable care to keep the same insulated, wherever it may reasonably be anticipated that persons, pursuing business or pleasure, may come in contact therewith. * * *." Curtis on Law of Electricity, § 510.

* * * * * *

" '5. "An electric company, maintaining a dangerous wire through or near a tree, is bound to anticipate that persons may lawfully climb the tree, and it is bound to exercise due care to prevent injuries to such persons from its wires." Id. § 512.

" '6. "The maintenance of a wire through a tree requires frequent inspection, for the company is charged with knowledge that the swaying of the limbs is likely to abrade the insulation and permit the dangerous current to escape." Id.

" '(These last two propositions are, of course, to be qualified by the nearness or remoteness of the tree with respect to human beings, and their natural and probable associations therewith.)' Dwight Mfg. Co. v. Word, 200 Ala. 221, 224, 75 So. 979.

"In Woodward Iron Co. v. Burges, 219 Ala. 136, 121 So. 399, this court, conditioned on remittitur, affirmed judgment for a boy who was injured by contact with defendant's power line while the boy was climbing a tree.

"[4] *So it must be regarded as settled that one who maintains a dangerous wire carrying electricity through or near a tree, must anticipate that persons may climb the tree, unless the circumstances are such that the remoteness of the tree, or perhaps some other reason, makes it improbable that a person will climb the tree.*

"*This decision, then, must turn on whether there was, or was not, a scintilla of evidence to support the inference that a boy might reasonably have been ex-*

*pected to climb the tree here involved."*
[Our emphasis.]

██ The liability of Alabama Power Company is predicated on negligence. Therefore, to be entitled to a directed verdict on this issue, it was incumbent on the plaintiff to prove, to the exclusion of any contrary reasonable inference, that Alabama Power Company owed a duty, that it breached that duty and that the breach of the duty was the proximate cause of the injuries she sustained.

We will examine the evidence on each of these elements in light of Blackwell v. Alabama Power Company, supra, to determine if the plaintiff met that burden.

On October 29, 1972, Ivy LaDonna Taylor suffered severe electrical burns when she came in contact with uninsulated high-voltage power lines erected and maintained by Alabama Power Company. The wire ran through a thirty-five to forty foot sweet gum tree which grew beside a public alley in a residential neighborhood in Bay Minette, Alabama. The tree was thickly foliated and contained thirty-nine limbs spaced no more than eighteen inches apart. The lowest limb was five feet nine inches from the ground at the trunk, and the ends of some branches reached to the ground. Boards, which served as a makeshift ladder, were nailed to the trunk of the tree, and the tree's lower limbs supported a wooden platform eight to ten feet from the ground. Mr. Sam Crane, District Superintendent for Alabama Power Company, who had viewed the scene less than twenty-four hours after the accident, was called as an adverse witness by the plaintiff. He testified, inter alia:

"Q. Would you describe that tree to the jury for us please?

"A. It was a sweet-gum tree, probably about 35 feet tall to the highest point on the tree—35 to 40 feet tall.

"Q. Describe the branches and foliage of the tree as you observed it?

"A. The limbs started fairly close to the ground and the tree had good foliage on it and numerous limbs.

"Q. Standing under the tree could you look up and see the wires going through the tree?

"A. Yes sir, you could.

"Q. Did you notice anything nailed to the tree or in the tree?

"A. Yes sir, there was several steps or boards nailed to the tree that seemed to be steps and what appeared to be part of an old refrigerator crate or something of that nature that had come off an appliance in the lower limbs of the tree.

"Q. What did that indicate?

"A. Probably children playing in the tree.

"Q. Did the tree look to you like it was easy to climb?

"A. Yes sir, it was."

A number of other children lived in the neighborhood and three children, including plaintiff, customarily played in the tree.

Three uninsulated power lines passed through the tree. The highest wire, which carried a charge of 7,200 volts, was ten feet below the top of the tree. A neutral wire was four and a half inches below the 7,200 volt line. The third line was four and a half feet below the neutral wire and carried no charge at the time of the accident. Thus, the lowest of the wires was approximately twenty-four feet above the ground and the highest twenty-nine feet above the ground. The highest and lowest wires were approximately sixteen feet and twenty-one feet, respectively, above the platform. All three wires passed in close proximity to the trunk of the tree and the two lower wires were embedded in the tree's limbs.

The tree had not been trimmed since 1965,[1] and Alabama Power Company employees had not even been in the area since 1968 when they installed a new transformer. Prior to January, 1972, Alabama Power Company had no policy of inspection but each employee was supposed to report any dangerous condition he encountered by chance. In January, 1972, Alabama Power Company instituted a plan for six-year periodic inspections of its lines, but, as of the time of the accident, it had not undertaken any inspection in this area.

The expert witness Jenkins testified that on the foregoing facts Alabama Power Company was not in compliance with the following industry safety codes which were in use at the time of the accident by well regulated power companies, viz.:

1. National Electrical Safety Code;

2. Line Clearing Manual for Overhead Electrical Conductors, Edison Electric Institute;

3. American Electricians Handbook.

Alabama Power Company's own Distribution Standards recommended that the top of a sweet gum tree be trimmed a minimum of five feet below a primary conductor. The standard recognized that a sweet gum tree was a fast growing tree.

Challenged by her playmates, the ten-year-old plaintiff attempted to climb to the top of the tree. In groping for a handhold, she grabbed the uninsulated 7,200 volt primary conductor while her foot rested on the uncharged low-voltage line. She then fell from the tree and when found by neighbors was unconscious. The burns suffered by her necessitated the amputation of three fingers, part of the thumb, and part of the palm of the left hand; a pin was placed in the ankle above one foot which was severely burned. Numerous skin grafts have also been required and will be required in the future.

In *Blackwell,* supra, the precise question was whether the electric company was entitled to a directed verdict. On the element of duty, the decision turned on whether there was a scintilla of evidence that *a* child might reasonably have been expected to climb the *particular* tree involved. This Court held there was at least a scintilla of such evidence from which the jury could and did find that a child would reasonably be expected to climb the particular tree. Therefore, the electric company was bound to anticipate that a child would climb the tree. Applying *Blackwell* to the procedural posture of this case—an appeal from directed verdict for plaintiff—the question becomes whether there was a scintilla of evidence from which a jury could find that a child might *not* be reasonably expected to climb the *particular* tree. Stated otherwise, is the evidence so clear and convincing and free from adverse inference that it would be unreasonable to assume *a* child would *not* climb the particular tree involved?

Having carefully considered the evidence, we answer the question, as alternatively posed, in the affirmative and conclude that the trial court was correct in removing this issue from the jury's consideration. The tree was in a residential neighborhood occupied by numerous small children. At the trunk, the lowest limb was only five feet nine inches from the ground and the ends of several branches reached almost to the ground. The tree was thickly foliated with branches close together, forming convenient foot and handholds all the way up to the power lines. When these factors are coupled with the existence of the climbing boards and platform, no one could reasonably say this tree was other than a children's climbing tree. In-

---

1. The evidence does not affirmatively disclose that this tree had ever been trimmed, only that trimming had not been done in the area since 1965. Taking the evidence in the light most favorable to Alabama Power Company, the inference might be drawn that the tree was in fact trimmed in 1965.

deed, even Alabama Power Company's *own* District Engineer's testimony—that this was a children's climbing tree—is uncontradicted.

▮ Alabama Power Company contends that it was without actual notice or knowledge of the dangerous condition and that it owed no duty of reasonable care because the plaintiff was a trespasser.

Lack of actual notice or knowledge is immaterial. Having erected and maintained highly dangerous uninsulated wires, in close proximity to trees, Alabama Power Company is charged with knowledge of whatever it would have ascertained by a reasonable inspection. Blackwell v. Alabama Power Company, supra; Alabama Power Co. v. Jackson, 232 Ala. 42, 166 So. 692 (1936); cf. Reynolds v. Iowa Southern Utilities Co., 21 F.2d 958 (8th Cir. 1927); Benton v. North Carolina Public-Service Co., 165 N.C. 354, 81 S.E. 448 (1914); Sweeten v. Pacific Power & Light Co., 88 Wash. 679, 153 P. 1054 (1915).

▮ It was stipulated that the power lines in question were suspended over a public way and not on Alabama Power Company's property. In *Blackwell,* supra, this Court said:

"[7] Whatever status intestate may have occupied as to Mr. and Mrs. Griffice, intestate was not a trespasser as against the defendant [Power Company], which owned neither the land nor the tree. (Citations omitted.) The fact that the injured child was trespassing upon a third party's property at the time of the injury is no defense. (Citation omitted.)" (275 Ala. at 131, 152 So.2d at 678.)

Thus, as a matter of law, plaintiff was not a trespasser as to Alabama Power Company.

Therefore, we conclude that on the particular facts of this case, Alabama Power Company, as a matter of law, was bound to anticipate that children would climb this tree and owed a duty of care to such persons.

▮ In *Blackwell,* supra, the requisite degree of care is alternately stated as being a high degree of care or care commensurate with the circumstances. When analyzed, the meanings of these phrases are not different. The degree of care reasonable under the circumstances is a high degree of care because of the danger inherent in the maintenance of highly charged wires in or near trees. 18 Am. Jur. Electricity § 48 (1928); see cases collected at Annot., 27 A.L.R.2d 204, 213 (1953).

Alabama Power Company could have discharged its duty of care by cutting down the tree, trimming the tree, covering the wire with a protective insulation, or erecting a guard device around the tree. See cases collected at Annot., 27 A.L.R.2d 204, 214–217 (1953).

It is undisputed that the wires ran through the tree, that the tree had not been periodically trimmed, that the wires had no insulation covering, and that no guard device had been erected. The evidence shows that the *top* of the tree was *ten feet above* the primary conductor which caused the injury while Alabama Power Company's own safety manual required a sweet gum tree to be trimmed a *minimum* of *five feet below* a primary conductor. The tree had not been trimmed in seven years, even though Alabama Power Company's manual described a sweet gum tree as fast growing. (The condition had existed for such a period of time that the tree limbs had grown around the two lower wires!)

The witness Jenkins testified that the conditions existing at the time of plaintiff's injury did not comply with any of the standards for line clearance recognized and used by well regulated electric companies. No attempt was made by Alabama Power Company to rebut this statement.

Mr. William Monroe, the local engineer for Alabama Power Company, called by plaintiff, testified as follows:

"Q. Would you read that, please?

"A. Section 281 . . . [National Electrical Safety Code]

"A. 'Where trees exist near supply line conductors, they shall be trimmed, if practicable, so that neither the movement of the trees nor the swinging or increased sagging of the conductors in wind or ice storms or at high temperatures will bring about contact between the conductors and the trees. Exception: For the lower-voltage conductors, where trimming is difficult, the conductor may be protected against abrasion and against grounding through the tree by interposing between it and the tree a sufficiently nonabsorbitive and substantial insulating material or device.'

"Q. All right. Was the conductor as it existed in reference to the tree where this accident occurred when you first observed it on Sunday following this accident, was that tree trimmed in accordance with that section?

"A. No."

Mr. Monroe was not examined by Alabama Power Company and no testimony was offered in rebuttal.

*All* of the *recognized standards* introduced in evidence *required periodic inspection and trimming*, preferably each two years. Alabama Power Company had no plan of periodic inspection in operation but depended on its operating crews to report conditions they might happen upon. No Alabama Power Company employee had even been in the area in four years.

We conclude that all of the evidence admits of but one inference—Alabama Power Company did not exercise any care, much less the high degree of care commensurate with the risk involved.

It is undisputed that the factual cause of plaintiff's injury was contact with the uninsulated wire maintained in a dangerous condition by Alabama Power Company.

■■■ In Alabama, foreseeability is the cornerstone of proximate cause. See, e. g., Liberty National Life Ins. Co. v. Weldon, 267 Ala. 171, 100 So.2d 696 (1957); Havard v. Palmer & Baker Engineers, Inc., 293 Ala. 301, 302 So.2d 228 (1974). In accord with the principles of law enunciated in *Blackwell*, supra, it having been established that the particular tree which contained the wire was one likely to be climbed by children, Alabama Power Company was bound to anticipate or foresee that a child might climb the tree and come in contact with the wire. In the instant case, plaintiff is clearly a member of the foreseeable class and was injured in the precise manner which the exercise of that degree of care imposed on the Alabama Power Company would have protected her against.

■■■ In brief, Alabama Power Company suggested no other proximate cause except the failure of plaintiff's mother and neighbors to notify it of the dangerous condition. For the cause of an injury to be its proximate cause it need not be the sole proximate cause. Chambers v. Cox, 222 Ala. 1, 3, 130 So. 416, 418 (1930); Havard v. Palmer & Baker Engineers, Inc., supra; Shepherd v. Gardner Wholesale, Inc., 288 Ala. 43, 256 So.2d 877 (1972). Assuming, arguendo, that plaintiff's mother and neighbors were under a duty to notify Alabama Power Company, such does not negate the inescapable conclusion that a proximate cause of plaintiff's injury was the failure of Alabama Power Company to insulate its wire or trim the tree. It is axiomatic that any negligence which might be attributable to the mother cannot be imputed to the child.

(3)

■■■ In its answer to the plaintiff's complaint, Alabama Power Company inter-

posed the affirmative defense of contributory negligence. At the time she sustained her injuries, the minor plaintiff was but ten years old. A child between the ages of seven and fourteen is prima facie presumed incapable of contributory negligence. Birmingham Ry., Light & Power Co. v. Landrum, 153 Ala. 192, 45 So. 198 (1907).

■ There was testimony that plaintiff scored "well above average" or in the "bright average range" on an "IQ" test administered at an undisclosed time after the accident but before trial.

This Court has long held that:

"Between the ages of 7 and 14 a child is prima facie incapable of exercising judgment and discretion, but evidence may be received to show capacity. (Citations omitted.)

*"The fact that an infant is shown to be bright, smart, and industrious is not sufficient to overcome the presumption of want of discretion.* (Citations omitted.)" (Emphasis supplied.) Jones v. Strickland, 201 Ala. 138, 77 So. 562 (1917).

As can be seen, the above testimony is insufficient to overcome the presumption. We have found no evidence in the record that the minor plaintiff possessed the discretion, intelligence, and sensitivity to danger of a child fourteen years of age.

The legal presumption being against the existence of those characteristics, and there being no evidence to the contrary, Alabama Power Company was not entitled to have the question of plaintiff's contributory negligence, if any, submitted to the jury. Alabama Power Co. v. Bowers, 252 Ala. 49, 39 So.2d 402 (1949).

In accord with our rule of review, we have reviewed the evidence in the light most favorable to Alabama Power Company and conclude that the trial judge did not err in directing a verdict for plaintiff as to the negligence counts.

It is, perhaps, unnecessary that we call attention of bench and bar to the obvious —that it is a rare instance when plaintiff is entitled to a directed verdict in a negligence action.

Let the judgment stand affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD, FAULKNER and JONES, JJ., concur.

COLEMAN and MADDOX, JJ., dissent.

MADDOX, Justice (dissenting).

I must respectfully dissent. The majority relies strongly on Blackwell v. Alabama Power Co., 275 Ala. 123, 152 So.2d 670 (1963). There, this Court said the plaintiff had a right to have a jury, not the trial judge, determine whether the Power Company was negligent. It is almost ironic how closely the facts of this case parallel the facts of the *Blackwell* case. Here, as in *Blackwell,* the trial judge took the case from the jury. I think the trial judge was wrong in taking the case from the jury in *Blackwell.* I think the trial judge was wrong here. In other words, the "scintilla rule" should be just as available to defendants as it is to plaintiffs.

I believe there was at least a scintilla of evidence that the wires were not the proximate cause of the injury. I also believe that since the jury saw the minor plaintiff testify at the trial and heard a psychiatrist tell about her IQ that there was at least a scintilla of evidence that she had a mental age of 14. There was at least a scintilla of evidence presented that the child's mother failed to properly protect her child against a known danger. Failure of a parent to extend such protection can be negligence. Pratt Coal & Iron Co. v. Brawley, 83 Ala. 371, 3 So. 555 (1888). I believe it was a jury question whether the parent was negligent and whether this negligence

was the proximate cause of the child's injury.

This child suffered a severe injury. The evidence of negligence was substantial. Nevertheless, I believe that every person has a right to have a jury of his peers pass on that question. Our "scintilla rule" has been jealously preserved even against strong opposition. The "scintilla rule" means that in Alabama it is even harder for a judge to take from a party the right of trial by jury. That is the legal principle involved and that is the reason, and the only reason, I dissent.