SHORES, Justice.
William and Loretta Moseley appeal from a judgment entered after the trial court directed a verdict against them in a negligence action. We reverse the judgment of the trial court and remand.
The underlying facts of this case were presented to this Court in Moseley v. Lathan, 448 So.2d 341 (Ala.1984). The following is a summary of facts relevant to this action:
The Moseleys purchased certain commercial real property from Herman and Dorothy Lathan for $64,200.00, payable over 16 years at 6% per annum interest. The Moseleys executed a promissory note, which was secured by a mortgage on the property. The promissory note stated that the monthly installments on the purchase price were due on the first of every month and that failure to meet the due date resulted in default. The Moseleys could cure this default, however, by making the late payment before the due date of the next installment. Failure to cure resulted in acceleration.
The Moseleys fell behind in making payments on the note, and the Lathans sought foreclosure on the mortgage in 1981. The Moseleys sought a preliminary injunction to prevent foreclosure. The parties, however, reached an agreement in that case to facilitate timely payments. The arrangements were described in the trial court’s order:
“It is, therefore, ORDERED, ADJUDGED and DECREED that said mortgage payments made pursuant to the Agreement and Stipulation of Settlement filed May 4, 1981, in the Office of the Circuit Clerk of Clarke County, Alabama, shall be automatically deducted from the account of the Plaintiffs [Moseleys] at Washington County State Bank and that said Washington County State Bank shall cause said payments to be credited to Account No. 414-345-9 at Jackson Bank and Trust Company in Jackson, Alabama, said account being the account designated by the Defendants in this cause as the proper depository for said payments.”
Thereafter, in practice, when the Moseleys deposited the amount of the monthly installment into an account used exclusively for payments on the note, Washington County State Bank issued its own cashier’s check made payable to the Lathans. The. Washington County State Bank then mailed this check to Jackson Bank, which deposited the check into the Lathans’ account.
On Tuesday, February 23, 1982, the Moseleys deposited the amount of the February installment (which was due February 1) with the Washington County State Bank. On Thursday, February 25, a cashier’s check was prepared. The check was not mailed until the following Monday, March 1, and was not received by the Jackson Bank until March 2. Because default was not cured, the Lathans instituted foreclosure proceedings, which this Court upheld in the prior case.
The Moseleys then commenced this action against the Washington County State Bank, alleging negligence and conspiracy. The case proceeded to trial, and the Mose-leys presented evidence that the bank operated under the payment arrangements established by the settlement agreement and set out in the court order. Margie Guy, a teller at the bank, testified that once the court order came down, the procedure of the Moseleys’ depositing the money and the bank’s preparing and mailing the cashier’s check was followed each month. In addition, Gaines McCorquodale, the Lathans’ attorney, testified that he called Mike Blount, the branch manager of the bank, every month, at the behest of the Lathans, to notify Blount that the Moseleys’ pay *231 ment was late. James Flint, the postal employee to whom Blount gave the check on March 1 for mailing, testified that Blount jokingly asked him if he had ever backdated a postal mark. Finally, William Moseley testified that it was Mike Blount who provided a copy of the court order to the Moseleys. However, at the close of the Moseleys’ evidence, the trial court granted the bank’s motion for directed verdict. The Moseleys’ motion for a new trial was denied, and this appeal followed. They argue error only in directing a verdict in favor of the bank on the negligence claim.
On appeal, the issue is whether the Moseleys presented sufficient evidence to submit to the jury the question of the bank’s duty of care. A motion for directed verdict is tested against the scintilla rule, which requires that a question go to the jury if the evidence or any reasonable inference arising therefrom furnishes the smallest trace or scintilla in support of the theory of the complaint. Alabama Power Co. v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975). The appellate court, also guided by the scintilla rule, determines whether there was sufficient evidence below to produce a conflict warranting jury consideration. Baker v. Chastain, 389 So.2d 932 (Ala.1980). Like the trial court, the appellate court must view all the evidence in the light most favorable to the non-moving party. Ritch v. Waldrop, 428 So.2d 1 (Ala.1982). Whether the scintilla rule requires that a given case go to the jury is dependent upon the substantive law. Taylor, supra.
A bank’s duty of care is determined in accordance with the Uniform Commercial Code, Article 4, “Bank Deposits and Collections.” Code 1975, §§ 7-4-101, et seq. According to § 7-4-103(3):
“Action or nonaction approved by this article or pursuant to federal reserve regulations or operating letters constitutes the exercise of ordinary care....”
Section 7-4-103(3) further states that “in the absence of special instructions, action or nonaction consistent with clearinghouse rules and the like or with general banking usage not disapproved by this article, pri-ma facie constitutes the exercise of ordinary care.” The commentary to § 7-4-103 states, in pertinent part:
“Under this Article banks come under the general obligations of the use of good faith and the exercise of ordinary care.... The term ‘ordinary care’ is not defined and is here used with its normal tort meaning and not in any special sense relating to bank collections. No attempt is made in the Article to define in toto what constitutes ordinary care or lack of it.”
Official Comment, No. 4.
The parties may vary the effect of Article 4 by agreement, but “no agreement can disclaim a bank’s responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure.” Code 1975, § 7-4-103(1). However, “the parties may by agreement determine the standards by which such responsibility is to be measured if such standards are not manifestly unreasonable.” Code 1975, § 7-4-103(1). The relevant portion of the commentary to Section 7-4-103(1) states:
“Subsection (1) confers blanket power to vary all provisions of the Article by agreements of the ordinary kind. The agreements may not disclaim a bank’s responsibility for its own lack of good faith or failure to exercise ordinary care and may not limit the measure of damages for such lack of failure, but this subsection like Section 7-1-102(3) approves the practice of parties determining by agreement the standards by which such responsibility is to be measured. In the absence of a showing that the standards manifestly are unreasonable, the agreement controls. Owners of items and other interested parties are not affected by agreements under this subsection unless they are parties to the agreement or are bound by adoption, ratification, estoppel or the like.
“As here used ‘agreement’ has the meaning given to it by Section 7-1-201(3) [‘General definitions’]. The agreement *232 may be direct, as between the owner and the depositary bank; or indirect, as where the owner authorizes a particular type of procedure and any bank in the collection chain acts pursuant to such authorization. It may be with respect to a single item; or to all items handled for a particular customer, e.g., a general agreement between the depositary bank and the customer at the time a deposit account is opened.”
Official Comment, No. 2. The U.C.C. defines “agreement” as a “bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in this title.” Code 1975, § 7-1-201(3). Hence, the parties may agree to a particular standard of care, so long as the standard is not manifestly unreasonable; and the agreement can be found in the language of the parties or by implication from other circumstances.
After carefully reviewing the record, we hold that Moseley presented sufficient evidence to show that the Washington County State Bank owed a duty of ordinary care in preparing and delivering the cashier’s checks. Admittedly, the Moseleys presented no evidence of regulations, rules, general banking usage, and the like under which the bank operated. However, they did produce evidence of an agreement between them and the bank regarding arrangements for paying the Lathans. These arrangements were well known to the bank; in fact, it was Blount who provided a copy of the court order to the Moseleys. In addition, the bank followed the same procedure every month and was notified routinely that the Moseleys’ payment was late. At trial, the bank emphasized that it was not a party to the litigation which gave rise to the Moseley-Lathan settlement. However, there was sufficient evidence that either the Moseley-Lathan agreement authorizing the payment procedure was adopted by the Washington County State Bank by its participation, or that an agreement arose between the Moseleys and the bank “by implication from other circumstances including course of dealing.” Code 1975, § 7-1-201(3).
Because timeliness was important to the payment arrangements, it was part of the bank’s duty of ordinary care. Although the court order fails to mention payment deadlines and William Moseley admitted that he did not specifically tell the bank that payment had to be made by a certain time, there was other testimony inferring that the bank knew the importance of the payment deadlines. McCorquodale testified that he routinely called Blount about Moseley’s missing the first-of-the-month due dates. Moreover, Flint, the postal employee, testified that Blount jokingly questioned him on March 1 about backdating mail. Thus, there is a reasonable inference arising from the evidence that requires submission to the jury the question of whether the bank knew or should have known both of the “cure” deadline and that timeliness was an element in handling the payments with due care.
Therefore, viewing all the evidence most favorably to Moseley, the non-moving party, we conclude that he offered sufficient evidence of a duty of care to produce a conflict warranting jury consideration. The judgment based on the bank’s directed verdict was improper and is hereby reversed.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, BEATTY and ADAMS, JJ., concur.